**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
--------------------------------------------------------X

|                                                    |     |                             |
|----------------------------------------------------|-----|-----------------------------|
|                                                    |  :  |                             |
| MALIBU MEDIA, LLC,                                 |  :  |                             |
|                                                    |  :  | Civil Action No. 4:15-cv-2281 |
| Plaintiff,                                         |  :  |                             |
|                                                    |  :  | (Chief Judge Conner)        |
| vs.                                                |  :  |                             |
|                                                    |  :  |                             |
| JOHN DOE subscriber assigned IP address            |  :  |                             |
| 71.58.216.197,                                     |  :  |                             |
|                                                    |  :  |                             |
| Defendant.                                         |  :  |                             |
|                                                    |  :  |                             |

--------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISQUALIFY PLAINTIFF'S COUNSEL AND STAY PROCEEDINGS

Defendant, John Doe, seeks to disqualify Plaintiff's counsel, Christopher

Fiore, Esq., and stay proceedings until such time that Plaintiff has had an

opportunity to obtain substitute counsel.

## STATEMENT OF THE CASE

On or about November 15, 2015 Plaintiff filed an action in the Central

District of Pennsylvania, alleging purported copyright infringements pursuant to

the United States Copyright Act of 1976, as amended, 17 U.S.S. §§ 101 et seq.

(Compl. at ¶1, Doc. 1). On or about December 2, 2015 this Court Order on Motion

for Leave to Serve Third-Party Subpoena Prior to a Rule 26(f) Conference. (See Order dated 12/2/2015).

Plaintiff has followed a for-profit business model of suing individuals who have downloaded its materials via a peer-to-peer computer protocol referred to in these proceedings as BitTorrent.  Plaintiff's business is made up of Malibu Media, LLC., a Germany company who tracks individual users of peer-to-peer protocols (whose name seems to be constantly changing), and Malibu Media's legal team who file the law suits in order to extract large settlements and attorney fees.  In pursuit of their business plan, Plaintiff has repeatedly denied it has ever authorized anyone else to distribute its works.  However, this is far from the truth.  Plaintiff is business partners with multiple free online web-sites which are accessed by an estimated 110 million viewers per day.

With each Complaint, including the instant action, Plaintiff files a "Declaration of Colette Peliffier Field in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference" states, "…we have never authorized anyone to distribute our content over the internet,…" (Dec. at ¶9, Doc. 7-1 filed 12/01/15).  It is reasonably believed that Plaintiff and Plaintiff's counsel are aware of the misstatements of truth, yet continue to proceed with their for-profit litigation business.  Both Plaintiff and Plaintiff's counsels, share large

profits from the business, are both equally culpable and liable for the damages

caused to Defendant as well as the thousands of other individuals wrongfully

targeted.

<u>STATEMENT OF THE QUESTION TO BE RESOLVED</u>

A. Should Plaintiff's attorney, Christopher Fiore, Esq., be disqualified from representing Plaintiff throughout the proceedings where he will be named as a co-defendant in counterclaims brought by John Doe **71.58.216.197**?

Suggested Answer: Yes

<u>ARGUMENT</u>

Plaintiff, Malibu Media, LLC., has sued thousands of internet subscribers for

the infringement of its copyrighted material.  It is estimated that Plaintiff filed 41%

of the nation-wide copyright suits in 2014, and 39% in 2015.[1]  The purported

infringements occurred via a peer-to-peer sharing program commonly known as

BitTorrent.  In previous proceedings, Plaintiff has been accused of being the initial

seeder of its materials to BitTorrent in order to profit from the statutory damages

afforded by the Copyright Act of 1976 as Amended.  (<u>See</u> Memorandum Opinion,

<u>Malibu Media, LLC., v. Matt Guastaferro</u>, no. 1:14-cv-01544 (E.D.Va July, 28,

2015).  Plaintiff has denied said averments, claiming that they would never

intentionally upload their material to the internet for others to download without

---

[1] "Copyright law Suits Target 'John Doe' Defendants," by Roy Strom Chicago Law Bulletin, January 21, 2016. http://www.chicagolawbulletin.com/Archives/2016/01/21/copyright-01-21-16.aspx

becoming paid subscribers to their web-site.  While the veracity of Plaintiff's denial of being the initial seeder of its materials to BitTorrent web-sites is in dispute, it is without question that Plaintiff has seeded its materials to the internet by other means.

Plaintiff, through its business partner, xHamster.Com ("xHamster"), did upload full length versions of its materials onto the internet.  xHamster is a free web-site which enables the upload, download, publication, and distribution of adult videos to anyone with access to a computer.  xHamster, through its free online registration, enables and encourages its individual users to upload content to their site which is then immediately available world-wide.  A visitor to xHamster does not need to be registered in order to view the entire video collection housed on xHamster's web-site, including the numerous copies of Plaintiff's works. xHamster may be accessed via computer, smart phone, tablet, or any other type of mobile device.

When an individual visits xHamster and views any content on its site, that content is automatically downloaded to the viewer's computer and a copy of that video is made on that viewer's hard-drive.  This copy remains on the viewer's computer until the computer overwrites the content at some unknown date in the future or the viewer moves the file to a different location in order to make it permanent.  Plaintiff has full knowledge that this copy is made automatically,

regardless of the viewer's intent, even if the content is copyrighted.[2]  xHamster also offers any free-registered user the ability to download a permanent copy of the file so the end user does not need to move the file from the temporary file folder. In addition to the direct downloads, xHamster also encourages any user, registered or not, to further distribute the video content via social media links and by other means.  Indeed, xHamster provides pre-generated computer code for the re-distribution of the content so that the video is played on third party web-sites and the end viewer never visits the xHamster web-site, knows that xHamster was the initial distributor of the video, or knows the identity of the initial video uploader. Plaintiff has explicitly asked viewers to share the videos with everyone in the world.  Significantly, even if a user views the video on xHamster, the user will have no knowledge of whether or not the content is authorized by a copyright holder other than the apparent authority given by its content business partners. Gizzi v. Texaco, Inc., 437 F.2d 308, 310, 1971 U.S. App. LEXIS 12286 (3d Cir. Pa. 1971)

In approximately 2011, Malibu Media, LLC., doing business under its trade name,  "X-Art", with full knowledge of how xHamster operates became a business partner and content provider to xHamster.[3]  Malibu Media, LLC., authorized

---

[2] This is true of almost all online video content, including YouTube, Vevo, etc.; whenever streaming video is watched online, a copy is downloaded to the individual hard drive first.
[3] http://xhamster.com/content_program.php

xHamster to freely distribute full length versions of X-Art titles, including but not limited to: *And Then There Were Three* (Uploaded by Plaintiff as "X-art – And then there were three SUPER HOT"); *Farewell*; *Yoga in the Sky* (Uploaded by Plaintiff as "X-Art Leila & Mr. X Yoga and Sex"); *Young & Hot*; *California Dreams*; *Pretty Back Door Baby*; *Holiday in Spain* (Uploaded by Plaintiff as "threesome with Two Blondes on Holiday in Spain"); *Tropical Fantasy*; *Manage a trios* (Uploaded by Plaintiff as "Threesome with the HOTTEST blondes ever!"); and *Poolside Striptease* (Uploaded by Plaintiff as "18 year old gives Awesome Blowjob ").[4]  Significantly, not only is X-Art a business partner of xHamster, but it is considered by xHamster to be an exemplar of their content partner program. (Exhibit "A").  If the videos seeded by Plaintiff are in anyway different than the ones found on BitTorrent web-sites, it is not knowable to the reasonable user before commencing a download via that medium, nor even upon viewing the completed copy post-download.

Interestingly, in an interview, Colette Pelissier Field used *Pretty Back Door Baby* as an example of movies which were being illegally downloaded; a movie that was uploaded by Plaintiff to a site that authorizes it for unfettered distribution.[5]

---

[4] Plaintiff uploaded additional full length videos, however the videos listed are the ones showing on the 'Content Partner' page.

[5] "Slapped with stealing sexual content – locals among those sued by California producers" By Traci Moyer, The Herald Bulletin, Sep. 27, 2014. http://www.heraldbulletin.com/news/local_news/local_business/slapped-with-stealing-sexual-content/article_3c76dcfe-45dc-11e4-8fe7-6b5fd2dbcc10.html

In addition to the videos directly seeded by Plaintiff, xHamster encourages its individual users (non-content partners) to upload videos for immediate re-distribution and publication.  Indeed, the majority of the content found on xHamster appears to be individual user uploaded and not "content partner" uploaded.   Much of the individual user uploaded content is copyrighted, and much, if not all of Plaintiff's content has existed at some point on xHamster's website.  The videos may be uploaded either under the individual user's screen name or anonymously.  Plaintiff, at all times relevant, knew that xHamster does not pre-screen content in order to stop the uploader from distributing copyrighted materials and at all times relevant knew this caused a great deal of confusion to registered and non-registered users as to the video's copyright status.  As a business partner of xHamster, Plaintiff is estopped from pursuing and profiting from its own acts and omissions as well as the acts and omissions of Plaintiff's business partner, xHamster, that created an intentionally confusing environment.

In addition to xHamster, Plaintiff is also business and content partners with Pornhub.com ("Pornhub") which is the most visited free adult video site on the internet. (Exhibit "B").[6]  The Pornhub Network is made up of the flagship site itself, Pornhub, as well as the rest of Pornhub's sister sites which include Youporn, Redtube, SpankWire, Tube8, Xtube, Extremetube, Porn MD, Thumbzilla, and

---

[6] http://www.pornhub.com/information#partner

KeezMovies (hereinafter "PornHub Network").  Pornhub is the largest

pornography web-site in the world.  Of the approximately 1 billion web-sites in

existence, Pornhub is the 64th most visited web-site in the United States and the

64th most visited web-site in the world.[7] (Exhibit "C").  When one does a google

search for "X-Art," listed directly below X-Art is a link to Pornhub which

specifically advertises "Watch *X-art* porn videos for free, here on Pornhub.com.

Sort movies by Most Relevant and catch the best full length *X-art* movies now!"

(Exhibit "D").  The fifth most popular Google hit on a search for "X-Art" is

Redtube, another member of the Pornhub Network and a listed business partner of

"X-Art".[8]  (Exhibit "E").  Plaintiff is even quoted on the partner page as expressing

their gratitude for being part of the RedTube Team:

> "The X-Art team definitely appreciates being part of Redube's
> partner Program. Our amazing content and your surplus of Traffic
> truly produces incredible results.  Cheers to a prosperous relationship.
>
> X-Art.com"

Youporn.com makes yet another of Pornhub's network sites where

Plaintiff's logo is prominently displayed as a business partner.[9] (Exhibit "F").

---

[7]  According to Alexa.com (an Amazon.com company), which monitors the popularity of all web-sites, adult and non-adult.  As of February 17, 2016, PornHub.com was the 64th most visited site in the world and 64th most visited site in the United States. http://www.alexa.com/siteinfo/pornhub.com
[8] http://www.redtube.com/contentpartner
[9] http://www.youporn.com/contentpartnerprogram/

Similar to xHamster, each of the Pornhub web-sites encourages individual users to upload copyrighted videos, including Plaintiff's, for distribution to the entire world.  On each of these web-sites, Plaintiff's copyrighted videos are posted by both Plaintiff and individual users for lengths of time that span months to years, being re-distributed to tens of millions of viewers without restriction.  Also similar to xHamster, the Pornhub Network encourages the re-distribution of the videos through social media links such as Twitter, Reddit, Tumblr, Google +, and StumbleUpon, and embedding in third party web-sites such as Blogger.  Despite Pornhub being sued in 2010 for copyright infringement, Plaintiff willfully entered into a business relationship with the Pornhub Network, fully knowledgeable that videos personally uploaded by Plaintiff would be intermingled with apparently unauthorized copies of its work.  None of the 60 million daily visitors to Pornhub, the 25 million daily users who visit Redtube, the 20 million daily users who visit xHamster, or the 3 billion visitors to Youporn a month, can know if the X-Art material posted on the free distribution web-sites are authorized or not, only that the Plaintiff is business partners with the free distribution web-sites which implicitly endorses the distribution method.

Plaintiff has intentionally used this chaos to create an environment where the average person cannot reasonably know the status of Plaintiff's copyrights. Plaintiff relies on the confusion this creates in order to induce copyright

infringements and fuel their litigation business model.  The confusion caused by

Plaintiff's business relationship with Pornhub and the other free sites has been

occurring for at least four years. (Exhibit "G").  The purpose of copyright

protections is to "promote the progress of the sciences and useful arts", not to

establish revenue creating traps.  U.S. Const., Art. 1 § 8.  The application of

Plaintiff's claims in the instant case of non-commercial infringement has a

significant chilling affect on the free flow of information and protected first

amendment rights where individuals can be hailed into court and be assessed

mandatory statutory damages for works which have implicitly or explicitly been

turned over to the public by act or deed.  The forfeiture or abandonment of

copyright protections occurs when the copyright holder makes an affirmative act to

abandon the protections. <u>Melchizedek v. Holt</u>, 792 F. Supp. 2d 1042, 1051 (D.

Ariz. 2011).  By intentionally uploading its content onto free distribution web-sites

and allowing other third parties to do the same, Plaintiff has made a public

declaration of its intent to abandon its copyrights, or, at the very least, estopped

mandatory minimum statutory damages.

   However, despite the videos initially seeded by Plaintiff , and the other full

length videos available for download that have been redistributed at least a

collective 11 million times on xHamster alone, Plaintiff still sues "John Does" for

infringement of those very same videos.  In a brief exploration of the actions filed

by Plaintiff, Plaintiff has sued based upon the infringement of *My Best Friend's Boyfriend* which was authorized by Plaintiff to be re-distributed to anyone in the world with access to a computer.  The initial seeding of the video on xHamster by Plaintiff garnered at minimum 3,288,039 publications, downloads, and re-distributions.  (Exhibit "A", *see also* Malibu Media, LLC., v Does 1-6, No. 12-cv-12593  (E.D.Mi June 14, 2012). In Malibu  v. Winkler, Plaintiff sued defendant for infringing on *Pretty Back Door Baby*, even though Plaintiff had already made the video available to the public without restriction.  Malibu Media, LLC., v. Winkler, No. 13-cv-03358 (D. Co. June 25, 2015).  In Malibu v. Tashiro, Plaintiff sued defendant on four infringements of videos, *Then There Were Three*, *Farewell*, *Yoga in the Sky,* and *Pretty Back Door Baby,* which Plaintiff had seeded itself. Malibu Media, LLC., v. Tashiro, No. 1:13-cv-00205, (S.D. In. April 8, 2013). Extensive discovery was conducted in Tashiro, however, and it does not appear that Plaintiff ever disclosed its role in the wide re-distribution of its videos and/or that it had already abandoned its copyright protections by act or deed via its business relationships with numerous free distribution web-sites.

Plaintiff has collected millions of dollars on content it has either affirmatively abandoned its copyright protections on, or, through its business partners, helped foster an environment so confusing to the general public so as to preclude them from recovering damages as a matter of law and/or public policy.

11

It is reasonably believed that Malibu Media has repeatedly denied or willfully failed to disclose the material facts in this, and multiple other federal jurisdictions.  Indeed, Plaintiff did attempted to cover its tracks by deleting the initially seeded content from xHamster, Pornhub, Youporn, etc., however, ample records of Plaintiff's uploads still exist.  Of the twenty videos Plaintiff alleges were infringed upon in the instant action, all of them are currently, or have been in the past, distributed on Plaintiff's business partners' web-sites, free of charge, with a request of individual users to share them with all.  Thus, Colette Field's declaration that Plaintiff has never authorized anyone to distribute their work is patently false and intentionally misleading. (See "Declaration of Colette Peliffier Field in Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference" – Doc. 7-1 filed 12/01/15).

Furthermore, this Court recently entered default judgment in favor of Malibu Media and against Defendant, Robert Powell, in excess of $41,000.00 at the behest of Plaintiff's counsel, Christopher Fiore, Esq.  (No. 1:15-cv-1211).  Attorney Fiore asked this Court to award statutory damages for each violation in the amount of $2,250.00, for a total of $119,250.00.  This Court awarded the minimum $750.00 per violation, however, it does not appear that attorney Fiore and/or Malibu Media has ever disclosed the relevant and material business relationships which may have further modified the award to reflect innocent infringer minimums.  Significantly,

at least 12 of the purported 57 alleged infringed videos currently appear on Plaintiff's business partners' web-sites.  When awarding damages, the court must consider if the copyright holder in any way aided or induced the purported infringement.  If this Court was made aware that some, if not all, of the purported infringed files has been free for download and distribution it would have taken it into consideration, even if the ultimate award was the same.

1. **Attorney Christopher Fiore, Esq., is a Member and/or Agent of Plaintiff's Abuse of the Civil Process,  Misuse of Copyright Protections, and/or Otherwise Deceptive, Corrupt and Misleading Business Practices.**

Attorney Fiore has filed suit and represented Plaintiff on numerous occasions, alleging the same copyright infringements.  In each instance, Attorney Fiore has filed that same false statement of Colette Fields, repeatedly failed to disclose material facts that he knew or reasonably should have known, and misused the federal courts in order to profit greatly off of Plaintiff's fraudulent, deceptive, and corrupt business practices.  Attorney Fiore is more than just an attorney who may have brought a non-meritorious suit on behalf of a client, but is an integrated cog in a mechanism which employs the unwitting Federal Court system as a money maker.  Even if attorney Fiore turned a blind eye to the willful misconduct instead of actively knowing of the deception, he has personally profited and is jointly liable for the damages caused.

Moving Defendant expects to file counterclaims against Malibu Media, LLC., as well as individually against Colette Fields, Brigham Fields, and Christopher Fiore, Esq., for, *inter alia*, fraud, conspiracy to commit fraud, abuse of civil process, malicious use of civil process, state Unfair Trade Practices and Consumer Protection Act, potential civil RICO claims as well as punitive damages.

## <u>CONCLUSION</u>

Whereas attorney Fiore is a participant, or at minimum, a material witness, attorney Fiore will be precluded from representing the interest of Plaintiff in this matter.  Defendant therefore respectfully moves this Court to disqualify attorney Fiore and stay all proceedings until such time that Plaintiff has had an opportunity to find alternative counsel for the immediate proceedings.

Respectfully submitted,

Dated: March 2, 2016

/s/ Aaron Brooks, Esq.
Aaron Brooks PA# 207801
Attorney for Defense
765 Beaver Branch Rd.
Pennsylvania Furnace, PA 16865
(814) 852-8264
ATB15@psu.edu