**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
--------------------------------------------------------X
:
MALIBU MEDIA, LLC,                                      :
                                                       : Civil Action No. 4:15-cv-2281
Plaintiff,                                             :
                                                       :
vs.                                                    :
                                                       :
JOHN DOE subscriber assigned IP address  :
71.58.216.197,                                         :
                                                       :
Defendant,                                             :
                                                       :
vs.                                                    :
                                                       :
COLETTE PELISSIER-FIELD,                   :
                                                       :
Third-Party Defendant,                             :
                                                       :
vs.                                                    :
                                                       :
BRIGHAM FIELD,                                     :
                                                       :
Third-Party Defendant,                             :
                                                       :
vs.                                                    :
                                                       :
CHRISTOPHER FIORE,                         :
                                                       :
Third-Party Defendant.                             :
                                                       :
                                                       :
--------------------------------------------------------X

## <u>DEFENDANT'S ANSWER WITH AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINTS</u>

And now comes the Defendant, JOHN DOE subscriber assigned IP address71.58.216.197, and files the following Answer with Affirmative Defenses, Counterclaims, and Third-Party Complaints against Colette Pelissier Field, Brigham Field, and Christopher Fiore and aver as follows:

1. Paragraph 1 is a conclusion of law which does not necessitate a response.

2. Denied. Plaintiff has abandoned or otherwise waived any copyright protections which may have existed and/or acted in a way that induced infringement and therefore Plaintiff is precluded from recovery of purported damages.

3. Defendant is without sufficient knowledge to admit or deny paragraph 3.

4. Admitted.

5. Denied. Plaintiff has abandoned or otherwise waived any copyright protections which may have existed and/or acted in a way that induced infringement and therefore Plaintiff is precluded from recovery of purported damages.

6. Defendant is without sufficient knowledge to admit or deny paragraph 6.

7. Paragraph 7 is a conclusion of law which does not necessitate a response.

8. Defendant is without sufficient knowledge to admit or deny paragraph 8.

9. Admitted.

10. Defendant is without sufficient knowledge to admit or deny paragraph 10.

11. Denied.  BitTorrent requires intermediary websites to connect hosts to recipients which are subject to DMCA take down notices.

12. Paragraph 12 is conclusory statement which does not necessitate a response.

13. Paragraph 13 is conclusory statement which does not necessitate a response.

14. Paragraph 14 is conclusory statement which does not necessitate a response.

15. Paragraph 15 is conclusory statement which does not necessitate a response.

16. Paragraph 16 is conclusory statement which does not necessitate a response.

17. Defendant is without sufficient knowledge to admit or deny paragraph 17.

18. Defendant is without sufficient knowledge to admit or deny paragraph 18.

19. Defendant is without sufficient knowledge to admit or deny paragraph 19.

20. Defendant is without sufficient knowledge to admit or deny paragraph 20.

21. Defendant is without sufficient knowledge to admit or deny paragraph 21.

22. Defendant is without sufficient knowledge to admit or deny paragraph 22.

23. Denied in part and admitted in part. Denied to the extent that Plaintiff has abandoned or otherwise waived any copyright protections which may have existed and/or acted in a way that induced infringement and therefore Plaintiff is precluded from recovery of purported damages. Admitted to the extent that Defendant did download or attempted to download the videos listed on Exhibit A, except for "*in for the night*."

24. Defendant is without sufficient knowledge to admit or deny paragraph 24.

25. Denied. Plaintiff has abandoned or otherwise waived any copyright protections which may have existed and/or acted in a way that induced infringement and therefore Plaintiff is precluded from recovery of purported damages.

26. Paragraph 26 is a conclusion of law which does not necessitate a response.

27. Denied to the extent that Plaintiff's counsel is on a contingency fee basis.

28. Paragraph 28 incorporates by reference the preceding paragraphs and does not necessitate a response.

29. Paragraph 29 is a conclusion of law which does not necessitate a response.

30. Denied. Plaintiff has abandoned or otherwise waived any copyright protections which may have existed and/or acted in a way that induced infringement and therefore Plaintiff is precluded from recovery of purported damages.

31. Denied. Plaintiff has abandoned or otherwise waived any copyright protections, or given implied or actual authority to download and/or distribute Plaintiff's materials.

32. Denied. Plaintiff has abandoned or otherwise waived any copyright protections, or given implied or actual authority to download and/or distribute Plaintiff's materials.

33. Denied. Defendant only acted on Plaintiff's warranties and advertisements that its materials were free to download and/or distribute.

But for Plaintiff's warranties and advertisements, no downloads would have occurred.  Defendant's downloads were innocent at worst.

WHEREFORE, Defendant respectfully requests that the Court DENY Plaintiff's Prayers for Relief and enter judgement in favor of Defendant. Defendant further requests attorney fees and costs be awarded to Defendant.

## AFFIRMATIVE DEFENSES

34. Abandonment of Copyright Protections – Plaintiff willingly entered into business partnerships with third-party websites (hereinafter "Free-sites) which offer free performance, copying, and distribution of Plaintiff's copyrighted materials.  Plaintiff advertises itself as a producer of free content for numerous Free-sites.  Said Free-sites post hundreds of Plaintiff's videos for free download and sharing.  Defense has identified more than 133,000,000 "hits" on Plaintiff's videos with potentially as many downloads and re-distributions through its business partners' websites.  This is an affirmative action of abandonment and/or forfeiture of copyright protections.

35. Unclean Hands – Plaintiff, through its business partners, advertises its videos as free to download and share.  Plaintiff, through its business partners, has posted over 250 of its videos and potentially re-distributed over 133,000,000 times.  Many of the videos Plaintiff distributes for free via its business partners' websites are the very same videos available via BitTorrent.  Plaintiff advertises its videos as "free" on four out of the five most visited free adult websites in the world, exposing hundreds of millions of visitors to the belief that Plaintiff's videos are free to download and share.  If any of the videos distributed by Plaintiff's business partners were not authorized, it is knowable only to Plaintiff.

36. Copyright Misuse – Plaintiff, through its business partners, advertises its videos as free to download and share.  Plaintiff, through its business partners, have poste over 250 of its videos and downloaded up to 133,00,00 times.  Many of the videos Plaintiff distributes for free via its business partners' websites are the very same videos available via BitTorrent.  Plaintiff advertises its videos as "free" on four out of the five most visited free adult websites in the world, exposing hundreds of millions of visitors to the belief that Plaintiffs videos are free to download and share.  None of the dozens of websites which host

Plaintiff's content list themselves as exclusive distributors.  Plaintiff encourages the downloading and sharing of its content via the internet. Whereas Plaintiff has already either abandoned it copyright protections, or given license to download and distribute its content, singling out only BitTorrent users in order to create a for-profit litigation scheme is against public policy and anti-competitive especially when Plaintiff has suffered no actual or apparent damages.  The purpose of the copyright law is not to entrap innocent individuals via false advertising.  The purpose of copyright protections is to spur creativity for the betterment of society. Plaintiffs us of using the copyright protections as a revenue generation scheme is against public policy.

37. Implied or Actual License – Plaintiff has knowingly and freely entered into business relationships and allowed its name to be associated with free distribution websites.  Plaintiff had knowledge prior to, and at all times thereafter, that the free distribution websites were distributing Plaintiff's copyrighted materials to anyone in the world with access to a computer.  Defense has identified potentially 133,000,000 free distributions of Plaintiff's videos through its business partners' websites. By engaging in business relationships with the free distribution websites

and by endorsing the relationship by placing its logo on the Free-sites'
websites, Plaintiff has given implied or actual license to copy, publish,
and distribute its copyrighted materials by anyone in the world with
access to a computer.

38. Estopple – Plaintiff did enter into a business relationship with free
distribution websites knowing that the business partners allowed un-
affiliated third-party users to copy and publish Plaintiff's copyrighted
materials. The free distribution websites encourage individuals to
download and share content found on the websites.  Plaintiff did know
that the copyrighted materials published and distributed through the free
distribution websites would be further copied, distributed, and published
by downstream users and that the downstream users had no notice of
Plaintiff's intent to retain any copyright protections in the distributed
works.  Plaintiff knew, or reasonably should have known this would
create great misunderstanding and confusion amongst the general public.
The downstream user is harmed when Plaintiff later attempts to assert
copyright protections in the form of lawsuits claiming statutory damages
for material it has held to be open to the public and for which it

knowingly and intentionally would never receive monetary compensation.

39. De Minimis – Plaintiff, through its business partners, has authorized the distribution, download, reproduction, performance, and sharing of its copyrighted materials for free to hundreds of millions of individuals around the world. Plaintiff receives no monetary compensation from the free distribution websites other than free publicity for those who may wish to join Plaintiff's subscription website.  Plaintiff has alleged no commercial infringement of its materials.  The purported infringements by Defendant caused no apparent or actual harm to Plaintiff.   Plaintiff can show no harm in what has already been authorized to be published and distributed hundreds of millions of times for free.

40. Failure to Mitigate Damages – Plaintiff has failed to mitigate any actual or perceived damages as a result of its own actions in creating a confusing and misleading environment where its business partners allow and promote copies of Plaintiff's works to be uploaded, downloaded and distributed worldwide.  If any of Plaintiff's materials posted on its business partners websites for free distribution were unauthorized, then

Plaintiff has failed to mitigate damages by ensuring its videos are not uploaded and distributed on websites which bear its trademarked name. Plaintiff had actual or constructive knowledge of the videos posted at all times relative.

41. Innocent Infringement – Notwithstanding any other defense, while Plaintiff has caused its own harm by its own deed or action, any purported infringement was unintentional and innocent.

42. Accord and Satisfaction – Defendant did offer and Plaintiff did accept Defendant as a subscriber, giving Defendant non-exclusive license to copy and possess Plaintiff's purported copyrighted material. Additionally, Plaintiff, through its business partners, did at the time of the purported infringement give apparent or actual authority for anyone in the world the distribute its works.

43. Injunctive Relief – Plaintiff has not shown immediate or ongoing harm and is therefore not entitled to injunctive relief.  Plaintiff did grant Defendant a license to copy and possess Plaintiff's purportedly copyrighted materials.

## COUNTERCLAIMS

## Factual Background

44. Malibu Media, LLC., (hereinafter "MM") is and was at all times relative, a California limited liability company with its principal place of business located in Los Angeles, California.

45. MM's primary business is the production and distribution of adult pornographic videos doing business under the name "X-Art."

46. MM distributes its video content through the combination of a subscription based website owned and operated by MM, and through third-party websites.

47. The third-party websites advertise themselves as "free" to view and download. Each video appears on its own web-page with a button to download and share.

48. Specifically, MM maintains relationships with the Pornhub Network and Xhamster.com (hereinafter "Free-sites").  The Pornhub Network is comprised of Pornhub.com, Youporn.com, Redtube.com, Tube8.com, Spankwire.com, Extremetube.com, Thumbzilla.com, and PornMD.com (Hereinafter "Pornhub Network").  It is reasonably believed that MM maintains relationships with numerous additional free distribution websites as well.

49. MM does not receive monetary compensation for its videos distributed via the Free-sites, but instead receives market exposure.

50. At all times relative, MM has held itself out to be a partner and free content provider on Pornhub.com, Youporn.com, Redtube.com, and Xhamster.com. (Exhibit "A", "B", & "D").  MM maintains its "X-Art" logo on Pornhub.com, Youporn.com, Xhamster.com, and on Redtube.com stated:

> "The X-Art team definitely appreciates being part of Redtube's Partner Program. Our amazing content and your surplus of Traffic truly produces incredible results. Cheers to a prosperous relationship!
>
> -X-Art.com" (Exhibit "C")

51. Pornhub.com, is the most visited adult content website in the world, and it is the 66th most visited commercial website in the world (55th most visited in the U.S.)[1].  To put this in perspective, Pornhub.com has more daily visitors that Pandora, Spotify, Hulu, Lowes, Expedia, or WebMD. Pornhub.com even has a higher global ranking than Walmart.com

52. Xhamster.com is the 83rd most visited commercial site in the world, followed by RedTube.com at 185th and YouPorn.com at 220th.

---

[1] According to Alexa.com as of June 22, 2016 (http://www.alexa.com/siteinfo/pornhub).  All rankings are taken from Alexa.com which monitors global and country specific website visitations.

Collectively, MM holds itself out to be a free content provider on four out of the five most visited free adult video websites on the internet. Not insignificant, the most visited torrent website, lags far behind at 594th.

53. MM is the only production company which advertises on all four of the aforementioned websites, thus MM is most likely the world's largest advertiser of free adult content videos by a single studio. (The other top free website, Xvidoes.com, does not advertise its content partners, however, MM's content does appear on its site).

54. At all times relative, the Free-sites advertise MM's videos as free to download and share. (Exhibit "E" – which shows Redtube.com, Youporn.com, and Pornhub.com advertising free X-Art content via web-searches).

55. In or about 2011, MM began uploading its content onto the Free-sites for free distribution and sharing. (Exhibit "A" – showing the uploads under the pseudonym "Colettex-art" of *And Then There Were Three:* Uploaded by Plaintiff as "X-art – And then there were three SUPER HOT"; *Farewell*; *Yoga in the Sky* - Uploaded by Plaintiff as "X-Art Leila & Mr. X Yoga and Sex"; *Young & Hot*; *California Dreams*; *Pretty Back Door Baby*; *Holiday in Spain* - Uploaded by Plaintiff as "threesome with Two Blondes on Holiday in Spain"; *Tropical Fantasy*; *Manage a trios -*

Uploaded by Plaintiff as "Threesome with the HOTTEST blondes ever!";
and *Poolside Striptease* - Uploaded by Plaintiff as "18 year old gives
Awesome Blowjob "). Said videos are advertised as free to download
and share.

56. It is reasonably believed that MM has uploaded numerous additional
videos to Xhamster.com as well as many other free distribution websites,
including but not limited to *Show you my love, Sex with a supermodel,
One Fine Day, Sex with Passion, Private Tutor, My Girlfriend is Back,
Teenagers in Love, Back Door Love, Carrie Takes Charge, A Wonderful
World, Girlfriends, Sexy En Noir, From 3 to 4*, and *Sex on the Beach*.

57. MM uploaded both full length videos as well as some shorter 6 minute
clips of the videos. Most of MM's full length videos run between 8 and
18 minutes.

58. At any given time, hundreds of MM's videos are posted on the Free-sites
and dozens of additional free distribution websites. For example, a
simple search for X-Art produces numerous of MM's videos. (Exhibits
"F" and "G" – which show MM videos posted on Pornhub.com and
Redtube.com at or about the time of the purported infringements. Exhibit
"H" – which shows results of an aggregator website displaying just a
fraction of MM's videos which have been posted on the Free-sites in the

past year).  MM's videos also appear on dozens of additional free

distribution websites, however, the actual relationship between MM and

the other free distribution websites are unknown.

59. Each video is fully downloadable and contains pre-generated computer

code for additional un-related websites to embed the videos and further

publish them.  For instance, MM's video, *Fashion Models*, has been

posted on Redtube.com since May 28, 2014, and has had at least

1,052,792 visitors with potentially as many free downloads. (Exhibit "I").

60. Whether posted by a content provider or an individual user, the post

appears identically on the websites.  The video, *Fashion Models* was

uploaded by an "unknown" user, therefore, it is unknown if it was posted

by MM, or an un-related third-party. Even though the Free-sites do not

appear to pre-screen for copyrighted material, the Free-sites must review

and approve a video before it is posted in order to stop child pornography

or other illegal content from being posted. Therefore, MM had actual or

constructive notice of the posting, even if it was not posted by MM.

61. The video, *Fashion Models*, has also been posted on Xhamster.com for

over two years and has been visited over 47,009 times, (Exhibit "J"), and

on Youporn.com since August 5, 2015 with 199,102 visits. (Exhibit "K")

These videos are fully downloadable and embeddable.

62. Not only do MM's business partners post the videos, making them available for downloading and sharing, the Free-sites also actively promote MM's videos by featuring the videos. For instance, MM's video, *Play Me*, was featured on Pornhub.com and visited 729,423 times in just one week. (Exhibit "L"). It is reasonably believed that this video has been viewed, downloaded, and/or shared more times in one week then MM has had paid subscribers since its formation.

63. Similarly, *Elle Hearts Girls*, was featured by Pornhub.com on two separate occasions and visited 1,032,328 and 778,463 times respectively. Exhibits "M" and "N").

64. As previously noted, the uploaded video postings contain a pre-generated computer code which allow third-party users to re-publish the videos on third-party downstream websites with ease. (Exhibit "O" – showing *Sweet Awakenings*, posted over a year ago, was featured a year later, and also reposted on VideoXList.com).

65. Similarly, *A Little Rain Must Fall*, was posted on Spankwire.com on March 4, 2013, and then re-published on Boysfood.com. (Exhibit "P").

66. In addition to the videos posted by MM and/or un-affiliated third parties, MM's business partners also post MM's content which has been rebranded with third-party advertising, creating even greater confusion.

For instance, both *Above the Air* and *One Show for Each* have been posted with advertising for a third-party website, HDZideo.com. (Exhibits "Q" and "R"). It is unknown what relationship MM has with HDZideo.com, however, the videos still contain the title and credits of the video.

67. Also posted hundreds of times on the Free-sites are shorter X-Art clips that contain advertising for third-party websites such as Lolly33.com and Lolly18.com. (Exhibit "T"). These third-party websites link directly to MM's subscription website and it can reasonably be inferred that MM has authorized the clips distributions.

68. The Pornhub Network cross-promotes the posted videos across its various websites, so any video posted on one Pornhub Network websites may also appear on any other of the other Pornhub Network sites. (Exhibit "U" – which shows Pornhub.com also promoting content from Tube8.com and Youporn.com).

69. Not only do MM's business partners post MM's videos, but they will also "recommend" additional videos to viewers. For instance, a viewer of *California Dreams* will also be directed towards MM's other videos, *Tiffany's Tight Ass* as well as *In for the Night*. (Exhibit "V").

70. Significantly, there is a crossover between the torrent websites and the videos being distributed on the Free-sites.  For instance, the description for *Deepest Desires* is the exact same file name as the torrent file names. (Exhibit "W").  It is unknown how many of the videos posted on the Free-sites came directly from torrent sites, or, how many of the torrent files came directly from the Free-sites.

71. In addition to the Pornhub Network and Xhamster.com, MM places its trademarked logo and has uploaded its content to numerous other free distribution websites.

72. MM also sponsors a link to Sex.com which allows third-party users to "pin" videos and pictures from the Free-sites and other free distribution websites to Sex.com for further distribution and sharing. (Exhibit "X" – showing MM's videos *Double Tease*, *Czech Beauties*, *Tropical Fantasy*, *One Fine Day*, and *Grow with Me*).

73. In total, Defense has documented over 250 of MM's videos being posted on its business partners' websites with well over 133,000,000 potential free downloads and redistributions of MM's videos.  The actual number of free viewings and downloads of MM's videos is most likely much, much higher.

## **Count One – Fraud**

74. Defendant incorporates by reference the preceding paragraphs as if set forth at length.

75. MM entered into a business relationship with multiple free video distribution websites, including but not limited to the Pornhub Network and Xhamster.com. It is reasonably believed and averred that Plaintiff has similar partnerships with additional Free-sites which do not list the content partners' names.

76. MM knowingly and voluntarily placed its trademarked logo on four out of the five largest distributors of free adult content videos in the world. (Exhibit "A", "B", "C", & "D").

77.  At all times relative, MM has held itself out to be a provider of free content for the Free-Sites.

78. MM has uploaded many of its own videos to the Free-sites for distribution to anyone with a computer.

79. At all times relative, MM gave actual or apparent authority for the Free-sites to distribute MM's content.

80. All videos uploaded to the aforementioned Free-sites must be reviewed prior to it being posted and MM had actual or constructive notice of all of its content on the Free-sites.

81. MM knew at all times relative that a simple Google search for "X-Art" would lead users to the Free-sites as well as torrent websites.  Indeed, many search results put the Free-sites at a higher search result than MM's own subscription web-site.

82. MM knew at all times relative that a Google search would retrieve results for the Free-sites which advertise Plaintiff's content as "Free" to download and share.

83. MM has uploaded numerous of its own full length videos to Free-sites without copyright notices or watermarks.

84. MM knew at all times relative that the Free-sites offer hundreds of MM's videos for download.

85. If any of the MM videos being distributed by the Free-sites were not authorized by MM, only MM would have that knowledge. MM knew or reasonably should have known that the viewer would have no knowledge of its authorization causing great confusion as to express or implied authorization to download and share the videos.

86. MM knew at all times relative that the MM content appearing on the Free-sites and on the torrent sites were often one in the same.

87. At all times relative, MM knew the videos it or other third parties had posted had been distributed for free hundreds of millions of times.

Defense has identified up to 133,000,000 free distributions of MM's videos through its business partners' websites.  This is reasonably believed to be the tip of the proverbial iceberg.

88. MM knew at all times relative that the Free-sites encourage viewers to download the free content.

89. MM knew at all times relative that the Free-sites encourage viewers to share the free content with others.

90. MM knew at all times relative that the Free-sites encourage viewers to embed the free content in third-party websites.

91. MM knew at all times relative that the free distribution of its videos via Free-sites was confusing to individual users.

92. MM knew at all times relative that it was suing individuals for purported infringement of videos that MM had uploaded itself, and/or which were posted on MM's business partners websites with actual or apparent authority to download, publish, and share.

93. Despite knowing that its videos have been distributed millions of times for free, and despite continuing to prominently display its logo as an endorsement of the Free-site's distribution, MM has become the largest filer of copyright infringement claims in the United States.

94. MM knew or reasonably should have known that individuals would rely on plaintiff's business relationship with Free-sites, and the shear abundance of its content uploaded to the Free-sites, as a public announcement of abandonment of its copyrights, or at minimum, an intent not to assert copyright claims for non-commercial use.

95. MM knew or reasonably should have known that individuals would rely on the Free-sites encouragement to "share" the videos would constitute a public announcement of abandonment of its copyrights, or at minimum, an intent not to assert copyright claims for non-commercial use.

96. MM counts upon the misperception that it has knowingly and/or intentionally created in order to build a for-profit business of suing individuals who relied upon MM's conduct and public announcements.

97. MM does not send cease and desist letters which would weed out inadvertent and innocent infringers from knowing and intentional infringers.

98. MM knew and counted on the social stigma associated with viewing and/or downloading of pornographic material.

99. MM knew and counted on that persons accused of downloading pornographic material, whether legally or illegally, would experience great embarrassment and emotional distress.

100.   MM knew and counted on the cost to defend a copyright infringement

claim being beyond the means of the average person.

101.   MM relied on the foregoing in order to create what is essentially an

extortion scheme based upon false advertising and social embarrassment.

102.   MM knew at all times, there is no pecuniary difference to MM

between a free download via the Free-sites or via BitTorrent.

103.   Defendant relied upon MM's public announcements and

advertisement of apparent free copies of its videos to Defendant's

detriment.  But for Plaintiff's public announcement and advertisement,

Defendant would not have downloaded Plaintiff's videos from any

source, much less BitTorrent.

104.   MM did commit civil fraud in that: 1) MM did represent its videos as

free to download and to share; 2) MM knew that its representations were

false and/or it did not intend to honor the representations/advertisements;

3) MM intended for individuals to rely on the false representation in

order to entrap individuals; 4) Defendant relied upon MM's false

representations; 5) which caused proximate harm to Defendant to the

extent of time, money, and embarrassment.


WHEREFORE, Defendant respectfully requests that the Court find in

favor of Defendant and enter judgement against Plaintiff. Defendant

further requests damages, attorney fees and costs be awarded to

Defendant.


## Count Two – Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law - 73. P.S. §201, Et Al.

105.   Defendant incorporates by reference the preceding paragraphs as if set

forth at length

106.   MM is an entity engaged in commerce under Section 2 of the act.  73.

P.S. §201-2(3).

107.   Defendant is a consumer of internet services which MM utilizes to

conduct its business.

108.   The purpose of the UTPCPL is to both deter persons from engaging in

business conduct that is unfair and/or deceptive and to make whole

victims of unfair and/or deceptive business practices.

109.   The UTPCPL defines "unfair or deceptive acts or practices" to mean:

    a.   "Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;" 73. P.S. §201-2(4)(ii)

    b.   "Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;" 73. P.S. §201-2(4)(iii)

    c. "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" 73. P.S. §201-2(4)(vii)

    d. "Advertising goods or services with intent not to sell them as advertised;" 73. P.S. §201-2(4)(ix

    e. "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73. P.S. §201-2(4)(xxi).

110.   MM did knowingly and intentionally enter into business relationships with free distribution websites.

111.   MM did knowingly and intentionally advertise its videos as free for download and sharing.

112.   MM's conduct of holding itself out to be a provider of free content when it had no intent of doing same is in violation of the UTPCPL.

113.   Defendant has suffered actual damages and continues to suffer damages as a result of MM's violations.

114.   As a result of the violations, MM is liable to Defendant for up to three times actual damages or one hundred dollars ($100), whichever is greater, plus costs and reasonable attorney fees. 73. P.S. §201-9.2(a).


WHEREFORE, Defendant respectfully requests that the Court find in favor of Defendant and enter judgement against Plaintiff. Defendant

further requests treble damages, attorney fees and costs be awarded to Defendant.

## THIRD PARTY COMPLAINTS

### Count Three - Colette Pelissier Field – Fraud

115.   Defendant incorporates by reference the preceding paragraphs as if set forth at length

116.   Colette Pelissier Field is co-owner and reasonably believed to be a corporate officer of Malibu Media, LLC., with a principal place of business located at 409 W. Olympic Blvd. Suite 501, Los Angeles, CA, 90015.

117.   Mrs. Field, acting through her local counsel, has filed the above captioned action in this jurisdiction and availed herself of this Court.

118.   Mrs. Field is an active participant in the business operations of MM and is a sophisticated business person who helps run MM's website.

119.   Mrs. Field, at all times relative, knew that MM and multiple Free-sites entered into a business relationship.

120.   Mrs. Field, at all times relative, knew that MM's trademarked name, "X-Art" was displayed on the Free-sites under "content partners."

121.   Mrs. Field, at all times relative, knew that she or one of her employees, agents or representatives authorized and uploaded MM's full length features onto the internet for distribution which remained on the internet from two and a half to five years.

122.   Mrs. Field, at all times relative, knew that many of the videos were uploaded under a pseudonym.

123.   Mrs. Field, at all times relative, maintained profile pages on several of the Free-sites.

124.   Mrs. Field, at all times relative, knew that some of the videos uploaded by Plaintiff were posted without copyright notice.

125.   Mrs. Field, at all times relative, knew that the business partners' Free-sites allowed third-party individuals to upload content to the Free-sites.

126.   Mrs. Field, at all times relative knew that third-parties were uploading MM's content to the Free-sites.

127.   Mrs. Field, at all times relative knew that the Free-sites were acting with actual or apparent authority to publish and make available the videos for download and sharing.

128.   Mrs. Field, at all times relative, knew that the Free-sites allowed and encouraged direct downloads and sharing of the content, regardless if it was directly authorized by MM.

129.   Mrs. Field, at all times relative, knew that videos uploaded by third-party individuals would remain on the Free-sites unless or until MM requested it to be removed.

130.   Mrs. Field, at all times relative, knew that MM's business partners had distributed MM's copyrighted materials to tens or hundreds of millions of individuals around the world, free of charge or other restriction.

131.   Mrs. Field, at all times relative, knew that displaying MM's trademarked name, "X-Art" on the business partners' Free-sites could or did create an impression that MM was abandoning its copyright protections, or at minimum, that it had no intent on asserting copyright claims for non-commercial use.

132.   Mrs. Field knew, or reasonably should have known, that someone downloading a file via BitTorrent does not know of the actual content of the file until it has completely downloaded.

133.   Mrs. Field knew, or reasonably should have known, that someone downloading a file via BitTorrent does not know if the actual content of the file is that of videos Plaintiff has authorized to be distributed and shared via MM's Free-site business partners, or if it is a "pirated" version.

134.   Mrs. Field knew at all times relative that the videos posted on the Free-sites and on the torrent sites were often one-in-the-same and/or otherwise indistinguishable from other files.

135.   Mrs. Field admits that downloading via BitTorrent is faster than other means of downloading a file via the Free-sites and/or her own subscription website.

136.   Mrs. Field knew or reasonably should have known that downloading via BitTorrent is easier than other means of downloading a file.

137.   Mrs. Field knew, or reasonably should have known, that individual users would take MM at its advertised word and reasonably assume "free" means "free" and "share" means "share."

138.   Despite having seeded some or all of MM's videos to the internet itself, at the direction of Mrs. Field, she engaged legal counsels, Keith Lipscomb, Esq., and Christopher Fiore, Esq., to sue thousands of individuals for copyright infringement.

139.   Despite knowing videos directly uploaded by MM to Free-sites and potentially distributed to hundreds of millions of individuals, at the direction of Mrs. Field, MM failed to disclose the business relationships or the extent of Mrs. Field's own hand in the purported copyright infringements.

140.   Despite knowing MM has given actually or apparent authorization to upload and distribute of hundreds of its videos to hundreds of millions of individuals around the world, Mrs. Field has proffered hundreds to thousands of false statements to the court, stating that "[a]lthough we have never authorized anyone to distribute our content over the internet, tens of thousands of U.S. Citizens are apparently downloading and distributing our works for free each month through peer-to-peer file sharing networks and, specifically, the BitTorrent protocol." (*emphasis added*). (See Declaration of Colette Pelissier Field Document #7-1 at ¶ 9).

141.   Mrs. Field knew that the Free-sites that distribute MM's videos are all part of the internet and are distributing the videos for free.

142.   Mrs. Field personally signs these statements.

143.   Mrs. Field, at all times relevant, knew she and/or MM did, and does authorize the distribution of the content over the internet via its business partners.

144.   Mrs. Field had actual or constructive knowledge that just one of the purported infringed videos in the instant case, *Fashion Models* was distributed over one million times by multiple Free-site business partners. (Exhibit "I")

145. Mrs. Fields also states that "it is simply impossible to compete with free" without disclosing that at her direction, MM entered into multiple business relationships with "free" distribution websites. (See declaration of Colette Pelissier Field Document #7-1 at ¶13).

146. Mrs. Field directed her legal counsels, Christopher Fiore, Esq., and Keith Lipscomb, Esq., to file her declaration despite knowing of its falsity.

147. Mrs. Field directed her legal counsels, Christopher Fiore, Esq., and Keith Lipscomb, Eqs., to file thousands of lawsuits on MM's behalf despite knowing that her company had entered into business relationships with free distribution websites.

148. Mrs. Field directed her legal counsels, Christopher Fiore, Esq., and Keith Lipscomb, Eqs., to file thousands of lawsuits on MM's behalf despite knowing that she was suing individuals for copyright infringement on videos that she had personally uploaded to the Free-sites.

149. Mrs. Field directed her legal counsels, Christopher Fiore, Esq., and Keith Lipscomb, Esq., to file thousands of lawsuits for personal gain despite having no actual damages.

150.   Mrs. Field's directions have caused harm to Defendant as well as thousands of other victims to the extent of lost time, money, and emotional distress.

151.   Executive officers are liable for their actions when they direct, participated in or co-operated in the tortuous act. <u>Knuth v. Erie--Crawford Dairy Coop. Asso.</u>, 463 F.2d 470, 481 (3d Cir. 1972).

152.   Due to her direction of these tortuous actions, Mrs. Field is personally liable for the harms caused.


WHEREFORE, Defendant respectfully requests that the Court find in favor of Defendant and enter judgement against Third-Party Defendant, Colette Pelissier Field. Defendant further requests damages, attorney fees and costs be awarded to Defendant.


## <u>Count Four – Brigham Field – Fraud</u>

153.   Defendant incorporates by reference the preceding paragraphs as if set forth at length.

154.   Brigham Field is co-owner and reasonably believed to be a corporate officer of Malibu Media, LLC. with a principal place of business located at 409 W. Olympic Blvd. Suite 501, Los Angeles, CA, 90015.

155.   Mr. Field, acting through his local counsel, has filed the above

captioned action in this jurisdiction and availed himself of this Court.

156.   Mr. Field is an active participant in the business operations of MM

and is a sophisticated business person who helps run MM's website.

157.   Mr. Field, at all times relative, knew that MM and multiple Free-sites

entered into a business relationship.

158.   Mr. Field, at all times relative, knew that MM's trademarked name,

"X-Art" was displayed on many of the Free-sites as "content partners".

159.   Mr. Field, at all times relative, knew that she or one of her employees,

agents or representatives authorized and uploaded MM's full length

features onto the internet for distribution which remained on the internet

form two and a half to five years.

160.   Mr. Field, at all times relative, knew that many of the videos were

uploaded under a pseudonym.

161.   Mr. Filed, at all times relative, knew that some of the videos uploaded

by Plaintiff were posted without copyright notice.

162.   Mr. Field, at all times relative, knew that the business partners' Free-

sites allowed third-party individuals to upload content to the Free-sites.

163.   Mr. Field, at all times relative knew that third-parties were uploading

MM's content to the Free-sites.

164.   Mr. Field, at all times relative knew that the Free-sites were acting with actual or apparent authority.

165.   Mr. Field, at all times relative, knew that the Free-sites allowed and encouraged direct downloads and sharing of the content, regardless if it was directly authorized by MM.

166.   Mr. Field, at all times relative, knew that videos uploaded by third-party individuals would remain on the Free-sites unless or until MM requested it to be removed.

167.   Mr. Field, at all times relative, knew that MM's business partners had distributed MM's copyrighted materials to tens or hundreds of millions of individuals around the world, free of charge or other restriction.

168.   Mr. Field, at all times relative, knew that displaying MM's trademarked name, "X-Art" on the business partners' Free-sites could or did create an impression that MM was abandoning its copyright protections, or at minimum, that it had no intent on asserting copyright claims.

169.   Mr. Field knew, or reasonably should have known, that someone downloading a file via BitTorrent does not know of the actual content of the file until it has completely downloaded.

170.   Mr. Field knew, or reasonably should have known, that someone downloading a file via BitTorrent does not know if the actual content of the file is that of videos Plaintiff has authorized to be distributed and shared via MM's Free-site business partners, or if it is a "pirated" version.

171.   Mr. Field knew at all times relative that the videos posted on the Free-sites and on the torrent site were often one in the same.

172.   Mr. Field knew, or reasonably should have known, that individual users would take Plaintiff at its advertised word and reasonably assume "free" means "free" and "share" means "share."

173.   Despite having seeded some or all of MM's videos to the internet itself, at the direction of Mr. Field, MM sues thousands of individuals for copyright infringement.

174.   Despite knowing of videos directly uploaded by MM to the Free-sites and potentially distributed to hundreds of millions of individuals, at the direction of Mr. Field, MM fails to disclose the business relationships or the extent of Plaintiff's own hand in the purported copyright infringements.

175.   Despite knowing MM has given actually or apparently authorization to upload and distribute hundreds of its videos to hundreds of millions of

individuals around the world, Mr. Field has proffered hundreds to thousands of false statements to the court, often as a co-signer of Mrs. Field's declarations.

176.   Mr. Field has failed to disclose and failed to direct his legal counsel to disclose the free distribution relationship.

177.   Mr. Field personally signed these statements.

178.   Mr. Field, at all times relevant, knew he and/or MM did, and does authorize the distribution of the content over the internet via its business partners.

179.   Mr. Field had actual or constructive knowledge that just one of the purported infringed videos in the instant case, "*Fashion Models*" may have been downloaded over one million times through multiple Free-site business partners. (Exhibit "I")

180.   Mr. Field directed his legal counsels, Christopher Fiore, Esq., and Keith Lipscomb Esq., to file Mrs. Field's declaration despite knowing of its falsity.

181.   Mr. Field directed his legal counsels, Christopher Fiore Esq., and Keith Lipscomb Esq., to file thousands of lawsuits on MM's behalf despite knowing that his company had entered into business relationships with free distribution websites.

182.   Mr. Field directed his legal counsels, Christopher Fiore Esq., and Keith Lipscomb Esq., to file thousands of lawsuits for personal gain despite having no actual damages.

183.   Mr. Field directed his legal counsels, Christopher Fiore, Esq., and Keith Lipscomb, Eqs., to file thousands of lawsuits on MM's behalf despite knowing that he was suing individuals for copyright infringement on videos that Mrs. Field had personally uploaded to the Free-sites.

184.   Mr. Field's directions have caused harm to Defendant as well as thousands of other victims to the extent of lost time, money, and emotional distress.

185.   Executive officers are liability for their actions when they direct, participated in or co-operated in the tortuous act. <u>Knuth v. Erie--Crawford Dairy Coop. Asso.</u>, 463 F.2d 470, 481 (3d Cir. 1972)

186.   Due to his direction of these tortuous actions, Mr. Field is personally liable for the harms caused.

WHEREFORE, Defendant respectfully requests that the Court find in favor of Defendant and enter judgement against Third-Party Defendant, Brigham Field. Defendant further requests damages, attorney fees and costs be awarded to Defendant.

## Count Five - Christopher Fiore – Fraud.

187.   Defendant incorporates by reference the preceding paragraphs as if set forth at length.

188.   Christopher Fiore, Esq., is an adult individual whose primary business is the practice of law with the law firm of Fiore & Barber, LLC., with a business address of 418 Main Street, Suite 100, Harleysville, PA 19438.

189.   Christopher Fiore, Esq., represents MM in the current action as well as numerous other actions alleging the same copyright infringement of MM's materials.

190.   Christopher Fiore, Esq., represents MM on a contingency fee basis, collecting a fixed percentage of settlements and/or judgements against defendants.

191.   Christopher Fiore, Esq., has collected thousands of dollars in fees by engaging with MM in its fraudulent conduct.

192.   Christopher Fiore, Esq.'s role as an attorney is an essential element in the fraudulent enterprise of MM, Brigham Field, and Colette Field.

193.   Christopher Fiore, Esq., admits he knew of the Free-site distribution of MM's copyrighted materials.

194.    Christopher Fiore, Esq., at all times relative, knew the actual or apparent free distribution of MM's videos was material information.

195.    Christopher Fiore, Esq., has acknowledge failure to disclose this information in this and other similar cases in this jurisdiction as well as other jurisdictions.

196.    Christopher Fiore, Esq., has admitted to knowledge of this information prior to the amending of the instant Complaint and service upon Defendant.

197.    Christopher Fiore, Esq., knew at all times relative he had a duty to disclose adverse material information to this and other courts during *ex-parte* motions. While failure of disclosure, in-and-of-itself does not necessitate civil liability, it does demonstrate his ongoing complicity in the fraudulent enterprise.

198.    Christopher Fiore, Esq., is an experienced litigator in copyright infringement actions and knows that disclosure of the material information could potentially adversely affect whether a judge would grant an *ex-parte* motion for early discovery prior to a Rule 26(f) conference.

199.   Christopher Fiore, Esq., also knows that disclosing that his client is the world's largest advertiser of free content could affect damages assessed and/or an award of attorney fees.

200.   Christopher Fiore, Esq., has been complicit in and an active participant in MM's fraudulent enterprise in order to receive pecuniary gain.

201.   Christopher Fiore, Esq., has conspired to commit fraud in this and other actions filed by Mr. Fiore.

202.   Christopher Fiore, Esq., conduct has caused harm to Defendant to the extent of lost time, money, and embarrassment.

203.   Christopher Fiore, Esq., is jointly liable with MM and the other third-party Defendants for the damages caused to Defendant.


WHEREFORE, Defendant respectfully requests that the Court find in favor of Defendant and enter judgement against Christopher Fiore. Defendant further requests damages, attorney fees and costs be awarded to Defendant.


**Count Six – Racketeering and Corrupt Organizations Act 18 U.S.C. §§ 1962(c)- Malibu Media LLC., Colette Field, Brigham Field, and Christopher Fiore.**

204.   Defendant incorporates by reference the preceding paragraphs as if set forth at length.

205.   MM has availed itself of this jurisdiction by filing the above captioned action which has caused the harm complained of.

206.   MM conducts business in this jurisdiction.

207.   MM has an agent, Christopher Fiore, conducting business on behalf of MM in this jurisdiction.

208.   Jurisdiction and venue are proper pursuant to 18 U.S.C. § 1965(a) - (d).

209.   Civil suits are authorized pursuant to 18 U.S.C. § 1965(c)

210.   Brigham Field, Colette Field, and Christopher Fiore are "persons" as defined by 18 U.S.C. § 1961(3).

211.   Malibu Media, LLC., along with its legal counsel, Keith Lipscomb and Christopher Friore, is an "enterprise" as defined by 18 U.S.C. § 1961(4) and is engaged in and affecting interstate commerce.

212.   MM, at the direction of Brigham Field and Colette Pelissier Field advertised it content as free to download and share via the internet.

213.   At the same time as advertising its videos as free to download and share, MM, at the direction of Brigham Field and Colette Pelissier Field, engaged in a for-profit litigation business, suing individuals for non-

commercial copyright infringement of the very same videos it was advertising as free to download and share.

214.   MM with the help of Christopher Fiore, Esq., and at the direction of Brigham Field and Colette Pelissier Field, has filed multiple lawsuits in this jurisdiction over several years, all alleging the same copyright claims while failing to disclose material information of fact and/or misrepresenting facts to the court.

215.   MM, with the help of Christopher Fiore, Esq., and at the direction of Brigham Field and Colette Pelissier Field, has filed actions in this and other jurisdictions despite having advertised and distributed the purported infringed content for free via the internet.

216.   MM, with the help of Christopher Fiore, Esq., and at the direction of Brigham Field and Colette Pelissier Field, threaten victims with disclosure of personal information to third-parties, including but not limited to neighbors and employers, in order to cause shame and embarrassment.

217.   MM, with the help of Christopher Fiore, Esq., and at the direction of Brigham Field and Colette Pelissier Field, threaten victims with expenditures of large sums of monies in order to defend themselves in the filed actions.

218.   MM, with the help of Christopher Fiore, Esq., and at the direction of

Brigham Field and Colette Pelissier Field, are essentially are running a

fraud and/or an extortion scheme, forcing victims to pay large settlements

in order to avoid extreme embarrassment, social stigma, and financial

distress.

219.   MM, Christopher Fiore, Esq., Brigham Field and Colette Pelissier

Field have used interstate wire communications to conduct fraudulent

activities in violation of 18 U.S.C. § 1343 (relating to wire fraud), 18

Pa.C.S.A § 911 (relating to corrupt organizations), as well as violations

of 18 Pa.C.S.A § 903 (relating to criminal conspiracy), 18 Pa.C.S.A §

3923  (relating to Theft by extortion), and 18 Pa.C.S.A § 4144 (relating to

securing execution of documents by deception).

220.   Christopher Fiore, Esq., Brigham Field and Colette Field, share in the

profits of the fraudulent activity.

221.   Christopher Fiore, Esq., Brigham Field and Colette Field, along with

Keith Lipscomb, did conspire and create an enterprise which violates 18

U.S.C. § 1962(a) - (c).

222.   The conspirators use proceeds from previous victims to fund future

operations.

223.   The conspirators' actions have cause direct harm to Defendant.

WHEREFORE, Defendant respectfully requests that the Court find in favor of Defendant and enter judgement against Malibu Media, LLC., and Third-Party Defendants, Brigham Field, Colette Pelissier Field, and Christopher Fiore. Defendant further requests treble damages, attorney fees and costs be awarded to Defendant.

### Count Seven - Punitive damages – Malibu Media LLC., Colette Field, Brigham Field, and Christopher Fiore.

224.   Defendant incorporates by reference the preceding paragraphs as if set forth at length.

225.   Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. Smith v. Wade, 461 U.S. 30, 46-47, 103 S. Ct. 1625, 1635-36 (1983)

226.   MM, Colette Field, Brigham Field, and Christopher Fiore, Esq., did engage in conduct that had evil motive or a reckless indifference to the rights of others.

227.   MM, through Colette Field and Brigham Field, did advertise their content as free to download and share to hundreds of millions of people around the world.

228.   MM, through Colette Field and Brigham Field, had knowledge that the advertisements were false and had no intent to honor said advertisements.  Instead, MM, through Colette Field and Brigham Field, engaged in a campaign of suing individuals for non-commercial infringement of their content.

229.   MM, through Colette Field and Brigham Field, threatened or did subpoena and confiscate thousands of individual's personal computers, containing a great deal of personal and private information, causing great embarrassment and disruption to people's lives.

230.   MM, through Colette Field and Brigham Field, threatened or did depose thousands of individual's neighbors in order to cause extreme embarrassment to defendants about private viewing of adult material.

231.   MM, through Colette Field and Brigham Field, did invade the privacy of thousands of individuals.

232.   MM, through Colette Field and Brigham Field, did threaten or cause defendants to spend large amounts of money in order to defend meritless actions filed against them.

233.   MM, through Colette Field and Brigham Field, did intentionally or recklessly inflict emotional distress upon defendants in order to extract large settlements far in excess of actual damages, if any.

234.   MM, Colette Field, Brigham Field, and Christopher Fiore, Esq., did offer false and/or misleading statements to the court in furtherance of their campaign.

235.   At all times relative, Christopher Fiore, Esq., admits to knowledge to the false advertising by MM.

236.   At all times relative, Christopher Fiore, Esq., shared in the profits generated by the campaign.

237.   At all times relative, Christopher Fiore, Esq., was intentionally or recklessly complicit in the campaign.

238.   At all times relative, MM, Colette Field, Brigham Field, and Christopher Fiore, Esq., worked in concert to defraud individuals.

239.   For the aforementioned reasons, MM, Colette Field, Brigham Field, and Christopher Fiore, Esq., have caused harm to Defendant for which they are jointly liable for punitive damages.


WHEREFORE, Defendant respectfully requests that the Court find in favor of Defendant and enter judgement against Plaintiff and the Third-

Party Defendants, Colette Filed, Brigham Filed, and Christopher Fiore.

Defendant further requests punitive damages awarded to Defendant in an

amount that would deter future actions by the parties.

**JURY TRIAL DEMANDED ON ALL COUNTS SO TRIABLE**


Dated: July 8, 2016

Respectfully submitted,

   /s/ *Aaron Brooks*
Aaron Brooks PA# 207801
Attorney for the Defense
765 Beaver Branch Rd.
Pennsylvania Furnace, PA
16865
(814) 852-8264
ATB15@psu.edu