## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>DOE Subscriber Assigned IP Address<br>71.58.216.197,<br><br>                    Defendant. | **CASE NO. 4:15-cv-2281** |

## ATTORNEY CHRISTOPHER FIORE'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THIRD-PARTY DEFENDANT COLETTE PELISSIER-FIELD'S MOTION TO DISMISS AND TO DISQUALIFY CHRISTOPHER FIORE, ESQ., AS COLETTE PELISSIER-FIELD'S COUNSEL

Attorney Christopher Fiore opposes Defendant Doe's ("Defendant") Motion to Strike Third-Party Defendant Colette Pelissier-Field's Motion to Dismiss and to Disqualify Christopher Fiore, Esq., as Colette Pelissier-Field's Counsel for the reasons set forth in the following memorandum.

## I.      INTRODUCTION

Defendant asks this Court to disqualify undersigned and strike the Motion to Dismiss filed by undersigned on behalf of third party claimant Colette Pelissier. Specifically, Defendant incorrectly claims that undersigned has a conflict with third party claimant Colette Pelissier.   No conflict exists because Defendant's

1

counterclaims and third party claims against Ms. Pelissier, Mr. Field, Malibu Media and undersigned are frivolous, and designed solely to harass the parties so that Defendant may escape liability for his infringement.  Plaintiff has always admitted it authorized some tubesites to stream some of its works during the first several years of its existence.  Doing so is a form of advertising.  Importantly, Plaintiff has _never_ authorized _anyone_ to use BitTorrent to reproduce or distribute its works.[1] Unauthorized streaming infringes a copyright owner's "performance" rights in violation of 17 U.S.C. § 106(4).  Plaintiff did not authorize Defendant to reproduce and distribute its works through BitTorrent.  Defendant's doing so infringed Plaintiff's copyrights.

Moreover, even if a conflict did exist, Malibu Media and Ms. Pelissier have expressly waived any conflict and their attorney of choice is undersigned.  And, all of the accusations Defendant makes against undersigned are from undersigned's normal course of representation and therefore barred by the litigation privilege. Finally, Defendant will not be prejudiced by undersigned's continuing representation.  And, pursuant to L.R. 83.9, undersigned was not required to file a notice of appearance.  Defendant's motions are nothing more than a legally and factually baseless attempt to escape liability by attacking Plaintiff, its members and

---

[1] Except Plaintiff allows its investigator, Excipio, to download (*i.e.*, reproduce) copies of its works sent via BitTorrent in anticipation of litigation.

its attorney.  Undersigned respectfully requests that the motion be denied.

## II.    FACTS

### A. To Advertise its Content, Plaintiff Used to Grant Certain Streaming Websites Temporary Licenses to *Perform* Some of Its Works

Plaintiff is a husband-and-wife-owned film studio that is dedicated to creating and producing high-quality artistic and beautiful adult content.  Plaintiff makes its copyrighted works available to subscribers through X-Art.com, a subscription-based website.  *See* CM/ECF 1,7-1.  A few years ago, to promote and drive traffic to Plaintiff's website, X-Art.com, Plaintiff registered itself as a content producer with a number of adult tube/streaming websites, including xHamster.com and pornhub.com.  *See* Declaration of Colette Pelissier Field ("Field Decl."), attached hereto as Exhibit "A," at ¶2.  Pursuant to these relationships, Plaintiff uploaded videos and clips of some of Plaintiff's X-Art films to those websites. *Id*. at ¶3.  All of the X-Art videos and clips which were uploaded were only made available to be streamed. *Id*.  Further, the X-Art videos and clips Plaintiff posted always contained copyrighted notices, X-Art watermarks, or both. *Id*. at ¶4.  At no point in time was any of Plaintiff's X-Art content made available on the streaming websites for download; the content was only made available for streaming. *Id*. at ¶5.

### B. Plaintiff Terminates its Licenses/Advertising-Relationships with Streaming Websites

Plaintiff's relationships with the streaming websites were successful for a

while.  *Id*. at ¶6.  But, overtime, X-Art.com became successful without the need to advertise on streaming websites.  *Id*.  Consequently, Plaintiff suspended its relationships with all of the streaming websites and removed all of its content from those sites except for short occasional 40 second clips. *Id.*  In recent years, Plaintiff has diligently and repeatedly issued DMCA take-down notices to those sites whenever Plaintiff is advised that copies of X-Art videos have been posted to them. *Id*. at ¶7.

### C. Plaintiff Faces a Piracy Problem

Plaintiff <u>*never*</u> authorized anyone to *distribute* or *reproduce* its content on the Internet.  *Id*. at ¶8.  Nevertheless, people *distribute* and *reproduce* pirated copies of Plaintiff's copyrighted X-Art movies for free using the BitTorrent protocol. *Id.*

### D. Plaintiff Exercises its Rights Under the Copyright Act

To prevent the infringement of Plaintiff's exclusive distribution rights, Plaintiff retained a company to identify the Internet Protocol Addresses of people using BitTorrent to distribute and reproduce Plaintiff's copyrighted works.  *See* CM/ECF 1, 7-1.  Based on this evidence, Plaintiff has filed numerous lawsuits against its online infringers.  In connection with these actions, Plaintiff has responded to scores of interrogatories.  When asked, Plaintiff explains its prior participation in content producer programs with streaming adult websites like xHamster and pornhub.  *See, e.g.*, sample discovery attached hereto as Exhibit "B."

Plaintiff has never concealed these facts.

### E. Undersigned Is Not Involved with Plaintiff's Litigation Against Its Former Counsel

Plaintiff, Malibu Media, is currently in litigation against its former attorney for misappropriation of funds, among other things.   See Malibu Media, LLC v. Lipscomb, Eisenberg & Baker, PL, 2:16-cv-04715-R-FFM (C.D. Cal. June 28, 2016).  Defendant accuses undersigned of not only being involved in the litigation, but guilty of the same conduct which Malibu Media accuses its former counsel and states: "It is upon information and belief that the missing funds are in part shared between attorney Lipscomb and attorney Fiore, creating a serious potential conflict between attorney Fiore, Plaintiff, and other Third-party Defendants." CM/ECF 43 at *4.

Defendant's statement is false and entirely devoid of any evidentiary basis. Undersigned has represented Malibu Media consistently and loyally for over five years. *See* Declaration of Christopher Fiore, ¶ 4 (Exhibit B).    During this time period I have never had any conflict with my client or its members.  My client has never accused me of any misconduct.  *Id.* at  ¶ 5.  I have absolutely no part in the litigation between Malibu Media and its former counsel.  *Id.* at ¶ 6.  I have never ever misappropriated funds, and any accusation to the contrary is extremely offensive.  *Id.* at ¶ 7.  I am my client's attorney of choice in this matter and I will represent them in good faith and to the best of my abilities, as I always have done.

*Id*. at ¶ 8.  I reasonably believe that if a conflict exists, I will provide competent and diligent representation to each client, as I always have.  *Id*. at ¶ 9.

Importantly, Malibu Media and Ms. Pelissier currently hold - and always have held - the highest respect for undersigned, and undersigned is their absolute first choice for representation.  *see* Declaration of Colette Pelissier at ¶ 10.  Any conflict that could possibly exist between the parties, has been waived.  *Id*.

## III.   LEGAL STANDARDS

"It is well established that '[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'"  *Prosser v. Nat'l Rural Utils. Coop. Fin. Corp.*, No. 1:08-cv-107, 2009 U.S. Dist. LEXIS 47744, at *6 (D.V.I. June 8, 2009).  The Third Circuit instructs "that a court may disqualify an attorney *only* when disqualification is an appropriate means of enforcing the applicable disciplinary rule, keeping in mind any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions."  *Mumma v. Bobali Corp.*, 382 Fed. Appx. 209, 210 (3d Cir. 2010) (citing *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)).  "[A]ccordingly, district courts require a party seeking disqualification of its opponent's counsel to 'clearly show that continued representation would be impermissible.'"  *Thompson v. Commonwealth of Pa. State of Police*, No. 1:13-cv-02301, 2014 WL 6982634, at

*1 (M.D. Pa. Dec. 10, 2014) (citing *Billy v. Peiper*, No. 11-cv-2577, 2013 WL 4083657, at *4 (M.D. Pa. Aug. 13, 2013)).   Absent such a showing, a request for disqualification should be rejected, as "[d]isqualification is a hard remedy, which courts should hesitate to impose *except when absolutely necessary*."   *Wisehart v. Wisehart*, No. 15-2768, 2015 WL 9480018, at *2 (D. N.J. Dec. 29, 2015); *see also Wilkes v. Passaic Cnty.*, No. 12-cv-6498, 2016 WL 852602, at *2 (D. N.J. Mar. 4, 2016) (same).

## IV.   ARGUMENT

### A. There Is No Basis To Disqualify Undersigned

*1. No Conflict Exists and if it Does, It has Been Waived*

Rule 1.7 governs conflicts of interests among or between current clients. The rule states:

- (a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
  - o  (1)  the representation of one client will be directly adverse to another client; or
  - o  (2)  there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

- (b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
  - o  (1)  the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
  - o  (2)  the representation is not prohibited by law;

- o (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
- o (4) each affected client gives informed consent.

Pa. RPC 1.7

Here, undersigned is representing Malibu Media, its principal owner Colette Pelissier, and himself. Each party has the same substantial interests and are facing either similar, or near identical claims against them. Because of this, undersigned reasonably believes that he will be able to provide competent and diligent representation to each client – as he always has. Neither Malibu, Ms. Pelissier, nor himself have any intention of bringing any claims against each other. Each party firmly denies the allegations made against them and believes they are frivolous and should be dismissed. And, as set forth above and in the attached declarations, each client has given its or her informed consent.

2. *Undersigned Does Not Have a Conflict with any of Malibu Media's other Litigation*

Defendant accuses undersigned of having a conflict on the basis of Malibu's litigation against its former attorney. As set forth above, this is false. No conflict exists. Malibu Media is well aware and has investigated extensively its claims against its former counsel M. Keith Lipscomb. They are wholly unrelated to any representative matters ever made in the Eastern or Middle District of Pennsylvania. And, the claims are entirely unrelated to the current claims before this Court.

8

However, most importantly, Malibu Media has absolutely no intention of bringing any claims against Mr. Fiore and sincerely respects and appreciates Mr. Fiore's longstanding representation on its behalf.  *See* Declaration of Colette Pelissier at ¶ 10.  Undersigned is Malibu's attorney of choice.  His continuing representation will not in any way prejudice Defendant, Malibu Media, Ms. Pelissier, Mr. Field or interfere with the administration of justice.

### 3. Undersigned Was Not Required to File a Notice of Appearance On Behalf of Third Party Colette Pelissier

Defendant argues undersigned should be disqualified because he failed to file a notice of appearance on behalf of Ms. Pelissier.  This argument is nonsense.  According to LR 83.14 "[t]he signing of a pleading or motion shall be deemed an entry of appearance."  Here, undersigned properly made his appearance on behalf of Ms. Pelissier in accordance with the local rules by signing a motion on her behalf.  *See* CM/ECF 40.

### 4. The Claims Against Undersigned Are Barred by the Judicial Privilege and Noerr Pennington Doctrine

Defendant argues a conflict exists because he is suing undersigned as a third-party defendant for fraud, RICO, and "punitive damages."  *See* CM/ECF 34.  Undersigned has not yet had the opportunity to file a Motion to Dismiss on behalf of himself, however, all of Defendant's claims are meritless on the basis of the judicial privilege and Noerr Pennington doctrine (among other reasons).

9

Each of Defendant's claims against undersigned arise out of the representation undersigned has done for Malibu Media, during its normal course, in judicial proceedings.  "It is also the law in Pennsylvania that statements made by counsel in the course of litigation are absolutely privileged." *Meyers v. Sovereign Bank*, 1 Pa. D. & C.5th 282, 291 (C.P. 2007).  "The judicial privilege provides 'immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought,' whether made by 'a party, a witness, an attorney, or a judge.' 'Statements contained in pleadings, as well as statements made in the actual trial or argument of a case, are privileged." *Church Mut. Ins. Co. v. All. Adjustment Grp*., 102 F. Supp. 3d 719, 730 (E.D. Pa. 2015).

Likewise, while the judicial privilege may not extend to federal causes of action, the Noerr-Pennington doctrine is designed to protect those who engage in litigation in the federal courts.

> There can be no question that the present plaintiffs have a right to protect their copyright interests via the litigation process. Consequently, even if the defendant could properly allege that the plaintiffs filed this suit for improper reasons, the Noerr-Pennington Doctrine bars the defendant's counterclaim because the plaintiffs are entitled to seek redress in this fashion under federal law. The defendant simply cannot demonstrate that plaintiffs' claims are "completely baseless" because plaintiffs had probable cause to institute these civil proceedings and reasonably expect success on the merits.

*UMG Recordings, Inc. v. Martino*, No. 4:08-CV-1756, 2009 U.S. Dist. LEXIS 33530, at *10 (M.D. Pa. Apr. 21, 2009).

This principal makes sense.  If any opposing party could disqualify a party's attorney on the basis of statements made during the litigation process, attorneys' would not be able to zealously represent their clients and parties could unjustly wield a tactic of ancillary litigation to frustrate the litigation process, just as defendant attempts to do so here.

## B. Defendant's Motion to Disqualify Undersigned is Done Solely to Harass the Parties

Defendant's Motion appears designed to harass undersigned, Plaintiff and its members and gain a tactical advantage in the litigation.   Indeed, he seeks to disqualify undersigned based on a conflict he ultimately created - which is meritless. "[A] motion to disqualify opposing counsel is subject to abuse, as it can be used solely as a tactical weapon."  *United States v. Perry*, 30 F. Supp. 3d 514, 529 (E.D. Va. 2014).  "We share the . . . concern about the 'tactical use of disqualification motions' to harass opposing counsel."  *Alexander v. Primerica Holdings, Inc.,* 822 F. Supp. 1099, 1115 (D.N.J. 1993) citing *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436, 86 L. Ed. 2d 340, 105 S. Ct. 2757 (1985).

In his Motion, Defendant makes the following two statements:

19.  It is reasonably foreseeable that attorney Fiore will end up being sued by Malibu Media, LLC., like his co-counsel and supervisor, Keith Lipscomb, Esq.,

20. It is also reasonably believed that attorney Fiore may have filed the instant action without communicating or seeking the approval of Plaintiff and/or conveying settlement offers to Plaintiff as is required.

*See* CM/ECF 43 at *4.

Essentially, Defendant is accusing undersigned of stealing client funds and then continuing to represent his client without informing them of the action. Defendant – without ***any*** basis or evidence claims this is "reasonably forseeable."   As set forth in the attached declarations these accusations are completely without merit, as is Defendant's motion.   And, these statements are extremely offensive, unprofessional and contrary to the administration of justice.

At no point did Defendant call undersigned and ask if any of this information is true.   Defendant cannot point to any accusations in the suit Malibu Media filed against its former attorney that would implicate undersigned.   Defendant cannot point to any past history of mine that could cause such actions to be "reasonably foreseeable."   Indeed, he cannot even point to one other attorney that has represented Malibu Media that is being either sued or accused of the same claims made against its former counsel.   The conclusions Defendant comes to in filing this motion are illogical and absurd.   There can be no other basis for filing this motion than to harass undersigned, Plaintiff and its principal member Colette Pelissier in order to gain a tactical litigation advantage – namely striking the Motion to Dismiss which challenges his frivolous claims.

Courts have consistently held that when attorneys engage in similar behavior, these actions are not well taken.   "[Defendant has made] virtually no inquiry at all.

To give it the benefit of the doubt, it may be that some of its assertions might perhaps have had some merit if there were evidentiary support to back them up. But the sequence of events paints this motion as a tactical weapon, rather than as a true effort to cleanse the litigation process of undesirable conflicts." *Original Appalachian Artworks, Inc. v. May Dep't Stores Co.*, 640 F. Supp. 751, 759 (N.D. Ill. 1986).  "It is one thing for a litigant to identify a possible conflict-of-interest problem. It is quite another (1) to force the opposing party to incur the cost of defending a motion to disqualify, asserted without adequate factual investigation, then (2) to fail to request discovery or an evidentiary hearing even after the factual inadequacies of the motion become patent (as they should have been to the movant from the outset). Such behavior itself calls proper attorney conduct into question." *Id*.

"No sufficient judicial decision or authority in the field of legal ethics was submitted by [defendant] to establish that its allegations, even if true, would be grounds for disqualifying."  *Wold v. Minerals Eng'g Co.*, 575 F. Supp. 166, 167 (D. Colo. 1983).  In *Wold*, the court then found the "Motion to Disqualify was interposed for improper purposes, namely, to harass opposing counsel, to cause unnecessary delay in this lawsuit and to increase needlessly the cost of this litigation." *Id*.

Here, Defendant filed this motion accusing undersigned of highly unprofessional and egregious, offensive conduct without any actual basis.

13

Defendant's motion should not be allowed – its purpose is only to cause additional burden and expense on Plaintiff by forcing it to find new counsel, delaying the case and the administration of justice.

### C. Defendant Cites to No Authority – Nor Does Any Exist – To Strike the Filed Motions to Dismiss

Fed. R. Civ. P. 12(f) sets forth when it is appropriate to strike a pleading or paper.  "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:(1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." *Id.*

Undersigned filed a Motion to Dismiss on behalf of Malibu Media and Ms. Pelissier-Field during the normal course of litigation, as their attorney hired to represent them in the matter.  The Motion to Dismiss sets forth reasonable and viable grounds as to why Defendant's counterclaims and third-party claims are not actionable.  Defendant can set forth no reason under the above rule to strike the Motion.  Even if undersigned did have a conflict, the motions were filed at the request of the parties and have merit.  Defendant's motion to strike seems to address the very heart of Defendant's overall motion – instead of responding to the merits testing the sufficiency of his complaints – he'd rather attempt to disqualify counsel as a tactical maneuver.

14

## V.     CONCLUSION

For the foregoing reasons, undersigned respectfully requests that the Court

deny Defendant's motions.

Respectfully submitted,

FIORE & BARBER, LLC

 /s/ *Christopher P. Fiore*
Christopher P. Fiore, Esquire
418 Main Street, Suite 100
Harleysville, PA 19438
Tel: (215) 256-0205
Fax: (215) 256-9205
E-mail: cfiore@fiorebarber.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2016, I electronically filed the
foregoing document with the Clerk of the Court using CM/ECF and that service
was perfected on all counsel of record and interested parties through this system.

 /s/ *Christopher P. Fiore*