## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | : | **CIVIL ACTION NO. 4:15-CV-2281** |
| | : | |
| **Plaintiff and Counterclaim** | : | **(Chief Judge Conner)** |
| **Defendant,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN DOE subscriber assigned IP** | : | |
| **Address 71.58.216.197,** | : | |
| | : | |
| **Defendant, Counterclaim** | : | |
| **Plaintiff, and Third-Party** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHRISTOPHER FIORE, BRIGHAM** | : | |
| **FIELD, and COLETTE PELISSIER-** | : | |
| **FIELD,** | : | |
| | : | |
| **Third-Party Defendants** | : | |

## <u>MEMORANDUM</u>

Malibu Media, LLC, commenced the above-captioned action against John

Doe, asserting one count of copyright infringement pursuant to the United States

Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*  John Doe rejoins with counterclaims

and third-party claims for common law fraud as well as violation of Pennsylvania's

Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. AND CONS. ANN.

§ 201-1 to -9.3, and the Racketeer Influenced and Corrupt Organizations Act, 18

U.S.C. § 1963 *et seq.*  Before the court are motions to dismiss by counterclaim

defendant Malibu Media, LLC, and third-party defendants Christopher Fiore,

Esquire, and Colette Pelissier-Field.

## I.    <u>Factual Background and Procedural History</u>

Malibu Media, LLC ("Malibu") is a producer and distributor of adult pornographic videos.  (Doc. 33 ¶ 45).  The company is jointly owned by Colette Pelissier-Field ("Pelissier-Field") and Brigham Field ("Field").  (<u>Id.</u> ¶¶ 116, 154). Malibu offers its works for download through a subscription-based website under the brand name "X-Art."  (<u>See</u> Doc. 28 ¶ 8; Doc. 33 ¶ 46).  In an affidavit filed with the court, Pelissier-Field avers that Malibu "never authorized anyone to distribute [its] works over the internet."  (Doc. 7-1 ¶ 9).

On November 25, 2015, Malibu commenced this action against John Doe, asserting a claim for violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq*.  (Doc. 1).  Therein, Malibu contends that it is registered owner of certain copyrights and that John Doe downloaded, copied, and redistributed Malibu's copyrighted works without authorization.  (<u>See</u> Doc. 1 ¶¶ 2-3, 23-24).  According to Malibu, John Doe used BitTorrent, a "common peer-to-peer file sharing system," to unlawfully download and redistribute its copyrighted works.  (<u>Id.</u> ¶¶ 11-26).  Malibu avers that its forensic investigator was able to download from John Doe each of the twenty copyrighted works listed in the first exhibit to its complaint.  (<u>Id.</u> ¶¶ 19-23, 25; <u>see</u> <u>also</u> <u>id.</u> Ex. A).

On December 1, 2015, Malibu moved the court for leave to file a third-party subpoena on Comcast prior to a Rule 26(f) conference, hoping to ascertain John Doe's identity.  (Doc. 6).  The court granted Malibu's motion, (Doc. 8), and Malibu thereupon served its subpoena on Comcast, seeking John Doe's name and contact information.  (Doc. 11 at 1).  John Doe moved to quash the subpoena, (Doc. 10), and

Malibu did not file opposition papers.  The court denied John Doe's motion, but

granted his request to proceed by pseudonym during the preliminary phase of this

litigation.  <u>Malibu Media, LLC v. Doe</u>, No. 4:15-CV-2281, 2016 WL 524248, at *2-3

(M.D. Pa. Feb. 10, 2016).  Malibu thereafter learned John Doe's true identity and

requested leave to file an amended pleading, under seal, identifying John Doe by

name to obtain a proper summons.  (Doc. 25).  The court granted Malibu's motion,

(Doc. 27), and Malibu filed both a redacted, unsealed amended complaint (Doc. 28)

and an unredacted, sealed amended complaint (Doc. 31).

John Doe answered the amended complaint on July 8, 2016, denying the

bulk of Malibu's allegations and asserting affirmative defenses.  (Doc. 33).  John Doe

also advances counterclaims against Malibu and third-party claims against Malibu's

owners and its attorney, Christopher Fiore, Esquire ("Attorney Fiore").  (Docs. 33-

34).[1]  John Doe charges the collective counterclaim and third-party defendants with

advertising Malibu's content for "free" download on third-party websites, only to

later sue individuals who download those free videos via torrent programs for

copyright infringement.  (<u>See</u> Doc. 33 ¶¶ 44-73, 92, 138, 147, 173, 181, 192).

According to John Doe, Malibu began entering into business relationships

with a number of third-party adult websites in approximately 2011.  (<u>Id.</u> ¶¶ 46-49,

55).  These third-party websites distribute adult video content to viewers for free.

(<u>Id.</u> ¶¶ 47, 54).  Malibu hoped to generate market exposure by partnering with third-

party sites.  (<u>Id.</u> ¶ 49).  Malibu and its officers knew that the third-party websites

---

[1] John Doe filed his third-party complaint (Doc. 33) and counterclaims (Doc. 34) as separate docket entries.  The allegations and enumerated paragraphs therein are identical.  For ease of reference, the court cites only to the first docket entry.

advertised and offered Malibu's video content as free to view, download, and share. (See id. ¶¶ 47, 119, 128, 157, 165).

Malibu uploads its content under pseudonyms such as "Colettex-art." (Id. ¶ 55). It shares both full length videos and shorter clips. (Id. ¶ 57). Each video appears separately on its own webpage "with a button to download and share" and is "fully downloadable." (Id. ¶¶ 47, 59). Once downloaded, the video files "contain[] pre-generated computer code" for users to embed and further publish the material on other websites. (Id. ¶¶ 59, 64). Malibu advertises itself as a "content provider" on four of the five "most visited free adult video websites on the internet." (Id. ¶ 52). According to John Doe, there is "crossover" between content shared on the third-party websites and the torrent websites where he is alleged to have downloaded "pirated" works *sub judice*. (Doc. 33 ¶ 70; see Doc. 38 at 3). John Doe does not know which or how many videos posted to torrent websites originate legitimately on the free websites versus illegitimately through piracy. (See Doc. 33 ¶ 70).

John Doe avers that Malibu knowingly held itself out as a provider of free adult video content and voluntarily partnered with third-party sites encouraging users to share that content. (Id. ¶¶ 77-91). He suggests that Malibu and its officers knew that users would consider the abundance of free content to indicate Malibu's abandonment of its copyrights or its intent not to pursue non-commercial copyright claims. (See id. ¶ 94; see also id. ¶¶ 137, 172). He asserts that Malibu has developed a "for profit business" of bringing infringement claims against those it misleads into believing its content is free. (See id. ¶¶ 96, 138-39, 147-49, 173-74, 181-83). Malibu then engages in what John Doe perceives to be abusive settlement tactics: rather

than sending cease and desist letters, Malibu files "John Doe" lawsuits, relying on the "social stigma" associated with viewing pornography to "extort[]" settlements from plaintiffs.  (Id. ¶¶ 97-102).

Against Malibu, Attorney Fiore, Field, and Pelissier-Field, John Doe asserts claims for fraud (Count I, III, IV, V) and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a)-(c) (Count VI).[2]  John Doe asserts a separate claim for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. AND CONS. STAT. ANN. § 201-1 to -9.3 (Count II) against Malibu.  John Doe has not yet served the third-party complaint (Doc. 34) on Field. Malibu, Pelissier-Field, and Attorney Fiore move to dismiss John Doe's claims against them.  (Docs. 36, 40, 69).

## II.  **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable

---

[2] Attorney Fiore initially represented Malibu herein.  After naming him as a third-party defendant, John Doe asked the court to disqualify Attorney Fiore as counsel.  (Docs. 41, 43).  The court granted John Doe's motion and disqualified Attorney Fiore as counsel to Malibu and Pelissier-Field, citing potential conflicts of interest between Attorney Fiore and his codefendant clients.  (Doc. 52).  The court also held that this disqualification would extend to Field once he is served. New counsel entered an appearance on behalf of Malibu and Pelissier-Field on November 29, 2016.  (Doc. 64).

reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Courts need not grant leave to amend *sua sponte* in dismissing non-

civil rights claims pursuant to Rule 12(b)(6), <u>Fletcher-Harlee Corp.</u>, 482 F.3d at 251, but leave is broadly encouraged "when justice so requires."  FED. R. CIV. P. 15(a)(2).

## III.   <u>Discussion</u>

John Doe claims that Malibu's copyright infringement claim is the product of fraudulent, deceptive, and racketeering conduct.  In essence, John Doe oppugns the legitimacy of Malibu's action against him.  The motions filed by Malibu, Pelissier-Field, and Attorney Fiore raise a collective immunity defense in addition to testing the sufficiency of each of John Doe's claims.

### A.   <u>Noerr-**Pennington** Immunity</u>

Malibu, Pelissier-Field, and Attorney Fiore each claim immunity under the <u>Noerr</u>-<u>Pennington</u> doctrine.  This doctrine originated with the United States Supreme Court's decisions in <u>E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961), and <u>United Mine Workers v. Pennington</u>, 381 U.S. 657 (1965), to reconcile federal anticompetition principles with the First Amendment right to petition the government.  Under <u>Noerr</u>, <u>Pennington</u>, and their progeny, individuals who seek redress from the government are generally immune from liability for their petitioning conduct.  <u>See</u> <u>Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.</u>, 806 F.3d 162, 178 (3d Cir. 2015).  The doctrine emerged in the antitrust context but has grown to encompass petitions directed to all government entities, including to courts for statutory or common law grievances.  <u>See id.</u> (citing <u>Cal. Motor Transp. Co. v. Trucking Unlimited</u>, 404 U.S. 508, 510 (1972)); <u>Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.</u>, 401 F.3d 123, 131 n.13 (3d Cir. 2005).

The <u>Noerr-Pennington</u> doctrine is not without limitation.  An individual who files a lawsuit as a "mere sham" to disguise or facilitate anticompetitive motives cannot avail itself of the doctrine's protections.  <u>See</u> <u>Cheminor Drugs, Ltd. v. Ethyl Corp.</u>, 168 F.3d 119, 122 (3d Cir. 1999) (quoting <u>Noerr</u>, 365 U.S. at 144).  The Third Circuit neatly catalogues sham litigation into two classes: those alleging a single sham lawsuit, and those alleging a series of sham lawsuits.  <u>See</u> <u>Hanover</u>, 806 F.3d at 179-81.  Separate standards govern within each category.

The Supreme Court defines sham lawsuits in "single filing" cases by a two-part test.  <u>See</u> <u>Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49 (1993).  First, the reviewing court considers whether the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  <u>Id.</u> at 60.  If the court answers this inquiry in the affirmative, it must assess the litigant's subjective motive for evidence that the lawsuit "attempts to interfere directly with the business relationships of a competitor."  <u>Id.</u> at 60-61 (citations and internal quotation marks omitted).  In cases alleging a "series of filings," the court asks whether "a series of petitions were filed . . . without regard to merit and for the purpose of using the governmental process (as opposed to the outcome of that process)" for anticompetitive ends.  <u>Hanover</u>, 806 F.3d at 180-81.  Courts scrutinizing multiple filings undertake a "holistic review" of the accused party's "filing success" as well as any indications of bad faith.  <u>Id.</u> (citing <u>Prof'l Real Estate</u>, 508 U.S. at 68 (Stevens, J., concurring)).

John Doe does not dispute that a copyright infringement action is the type of activity that <u>Noerr</u>-<u>Pennington</u> aims to protect.[3]  Rather, John Doe adjures that Malibu's litigation tactics trigger the sham lawsuit exception.  (<u>See</u> Doc. 83 at 15-22; Doc. 84 at 16-17; Doc. 85 at 16-18).  He claims exception to immunity based on both Malibu's single filing of this lawsuit and its series of lawsuits against others.  (<u>See</u> Doc. 83 at 15-22).  The court addresses these arguments *seriatim.*

John Doe asserts that Malibu's claim lacks objective merit.  He recites his affirmative defenses and reiterates his theory of the case, to wit: that Malibu uploaded some of its content to free streaming websites, that its content later appeared on torrent websites, and that Malibu aggressively pursued torrent downloaders with copyright infringement actions.  (<u>See</u> Doc. 83 at 16-17).  But the fact that John Doe has a plausible affirmative defense to Malibu's claim does not render the claim itself so "objectively baseless" that no reasonable person could expect it to succeed.  <u>See</u> <u>Prof'l Real Estate Investors, Inc.</u>, 508 U.S. at 60.  John Doe effectively concedes liability—admitting that he "did download or attempt[] to download the videos" identified in Malibu's infringement complaint—and instead leans exclusively on his affirmative defenses.  (Doc. 33 ¶ 23).  Against this backdrop, we cannot conclude that Malibu's claim is "objectively baseless."

Nor has John Doe alleged a pattern of objectively meritless lawsuits.  He suggests in his Rule 12 briefing that only one of "the 5000 copyright actions filed" by

---

[3]  Several courts within the Third Circuit have resolved that the doctrine cloaks copyright infringement claims with immunity.  <u>See</u>, <u>e.g.</u>, <u>UMG Recordings, Inc. v. Martino</u>, No. 4:08-CV-1756, 2009 WL 1069160, at *3-4 (M.D. Pa. Apr. 21, 2009); <u>Motown Record Co., L.P. v. Kovalcik</u>, No. 07-CR-4702, 2009 WL 455137, at *4-5 (E.D. Pa. Feb. 23, 2009).

Malibu has gone to trial and speculates that Malibu "possibly has the worst track record of any multiple filing litigant in the history of the U.S. judicial system." (Doc. 83 at 19). This allegation lacks any foundation in the pleadings. And it wholly fails to account for the fact that the majority of Malibu's infringement actions resolve by settlement and voluntary dismissal. The court takes judicial notice of the seventy-seven infringement lawsuits filed by Malibu in this district since January 31, 2014. In this district alone, Malibu settled with seventy-three plaintiffs and obtained default judgments against three more. The fact that Malibu has not proceeded to trial is no more an indication of frivolity than a settlement is proof of liability.

John Doe also notes that a federal grand jury in Minnesota recently indicted two attorneys for "essentially running the exact same copyright litigation scam." (Doc. 83 at 16-17). A review of the indictment in <u>United States v. Hansmeier</u>, No. 1:16-CR-334 (D. Minn. 2016), exposes material distinctions anent the matter *sub judice*. The indictment charges Paul R. Hansmeier and John L. Steele with three counts of conspiracy to commit mail and wire fraud and money laundering and to commit and suborn perjury, as well as five counts of mail fraud and ten counts of wire fraud. <u>Id.</u> at Doc. 1. Hansmeier and Steele allegedly formed "sham entities" to obtain copyrights to pornographic videos, then uploaded those videos directly to torrent websites with intent to induce consumers to illegally download them. <u>Id.</u> Hansmeier and Steele purportedly engaged in a host of "extortionate" settlement tactics, threatening downloaders with embarrassing and costly litigation if they did not pay the demand. <u>Id.</u> But Hansmeier and Steele are not Malibu, and the court will not impute their conduct to taint the validity of Malibu's claim herein.

10

Moreover, John Doe does not allege that Malibu itself uploaded videos to *torrent websites* for entrapment purposes, a fact material to the Hansmeier indictment. John Doe satisfies neither exception to the Noerr-Pennington doctrine.

John Doe lastly contends that Attorney Fiore does not have "standing" to seek immunity under Noerr-Pennington. According to John Doe, only Malibu and its owners, as plaintiffs to the underlying suit, can claim the doctrine's protection. (Doc. 84 at 16). John Doe cites broadly to the Supreme Court's standing analysis in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), but otherwise fails to identify support for his conjecture. It would defy logic to grant immunity to Malibu but deny it to the attorney who filed the lawsuit on its behalf. Malibu, Pelissier-Field, and Attorney Field are each entitled to Noerr-Pennington immunity.

**B.   Substantive Merits**

Assuming *arguendo* that John Doe's claims transcend Noerr-Pennington, they nonetheless fail on their merits. The court will address briefly John Doe's claims for common law fraud, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. AND CONS. ANN. § 201-1 to -9.3, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1963 *et seq*.

To prevail on his fraud claim under Pennsylvania law, John Doe must allege: (1) a representation (2) that is material to the transaction at hand, (3) made falsely, with knowledge of or recklessness to its falsity, (4) with intent to induce reliance thereon, as well as (5) resulting justifiable reliance on the misrepresentation and (6) injury proximately caused thereby. Bouriez v. Carnegie Mellon Univ., 585 F.3d 765,

11

771 (3d Cir. 2009) (quoting <u>Overall v. Univ. of Pa.</u>, 412 F.3d 492, 498 (3d Cir. 2005)). John Doe's fraud claim is also governed by the heightened pleading standard of Rule 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

John Doe alleges that Malibu represented its videos to be free to download and share, and that Malibu knew this representation to be false. (<u>See</u> Doc. 33 ¶ 104). He offers sufficient *allegata* to support these assertions, even measured against the elevated Rule 9(b) standard. (<u>See id.</u> ¶¶ 47, 54, 119, 157). But his pleading is devoid of factual support for the remaining elements. His cursory assertion that Malibu or its officers "intended for individuals to rely on the false representations in order to entrap" them finds no support in the record facts. (<u>See id.</u> ¶ 104). Indeed, the only indication of intent is John Doe's assertion that Malibu provided its content to free websites for "market exposure." (<u>Id.</u> ¶ 49). John Doe admits that he knew Malibu operates a for-profit subscription-based service, undermining his allegation that it was justifiable for him to believe *all* of Malibu's content was free to download and share. (<u>See id.</u> ¶ 46).

Further, John Doe does not allege injury with particularity. He cursorily avers that the purported fraudulent copyright lawsuit has cost him "time, money, and embarrassment." (<u>See</u> Doc. 33 ¶¶ 104, 150, 184, 202). In briefing, he clarifies that the harm he suffered is "attorney fees and costs." (Doc. 84 at 9). John Doe then professes that he "will submit the necessary documentation" to elucidate his alleged injury further "at the appropriate time." (<u>Id.</u>) This bare allegation falls well

short of both the Rule 9(b) and 12(b)(6) standards.  John Doe fails to state a claim for fraud.[4]

His RICO claim fares no better.  RICO creates a civil remedy for "[a]ny person injured in his business or property" by violation of the statute's substantive provisions.  18 U.S.C. § 1964(c).  The statute makes it unlawful for any person in the employ of an "enterprise" to "participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  Brown v. Access Midstream Partners, L.P., 141 F. Supp. 3d 323, 334 (M.D. Pa. 2015) (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 906 (3d Cir. 1991)).  RICO defines "racketeering activity" to include various predicate offenses, including extortion and wire fraud.  See 18 U.S.C. § 1961(1).  John Doe suggests broadly that Malibu, Pelissier-Field, and Attorney Fiore have engaged in a pattern of criminal extortion, fraud, and deception by "forcing victims to pay large settlements in order to avoid extreme embarrassment, social stigma, and financial distress."  (Doc. 33 ¶¶ 218-19).

John Doe offers no meaningful defense of his RICO claim.  He emphasizes the criminal charges pending against Hansmeier and Steele in Minnesota, (Doc. 84 at 13-14; Doc. 85 at 13-15), but, as set forth above, the court squarely rejects any attempts to draw parallels to that matter.  Otherwise, John Doe asserts that

---

[4] John Doe avers that Pelissier-Field and Attorney Fiore jointly defrauded the court by submitting a declaration stating that Malibu has "never authorized anyone to distribute our content over the internet."  (Doc. 84 at 7-9; Doc. 85 at 7-9; see also Doc. 7-1 ¶ 9).  John Doe fails to allege (and as a matter of logic, cannot allege) that he *personally* relied on this declaration to his detriment.  Accordingly, the declaration cannot form the basis of John Doe's fraud claim.  To the extent the declaration is ultimately proven to be false or fraudulent throughout the course of this litigation, the court will respond appropriately.

"continuous filing" of infringement actions and attendant settlement practices are predicate substantive acts under RICO.  (See Doc. 84 at 12; Doc. 85 at 12).  But the pursuit of colorable claims by resort to legal process is not extortion.  Peterson v. Phila. Stock Exch., 717 F. Supp. 332, 336-37 (E.D. Pa. 1989); see also Atl. Recording Corp. v. Raleigh, No. 4:06-CV-1708, 2008 WL 3890387, at *5 (E.D. Mo. Aug. 18, 2008).  The court has determined that Malibu's claim is objectively reasonable by virtue of John Doe's own concessions.  John Doe fails to identify a pattern of extortionate racketeering activity and thus fails to state a civil RICO claim.

Lastly, we consider John Doe's claim against Malibu under Pennsylvania's Uniform Trade Practices and Consumer Protection Law. 73 PA. STAT. AND CONS. STAT. ANN. § 201-1 to -9.3.  John Doe relies on the statute's "catch-all" provision, which makes it unlawful to "[e]ngag[e] in any . . . fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."[5]  Id. § 201-2(4)(xxi).  Pennsylvania courts consistently hold that a 1996 amendment of the statute to include both "fraudulent" *and* "deceptive" acts "lessened the degree of proof required."  Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 153-54 (Pa. Super. Ct. 2012) (collecting cases).  Hence, to prevail on a claim under the catch-all provision, a plaintiff need not establish common law fraud.  He need only show (1) a deceptive act likely to deceive a reasonable consumer; (2) justifiable

---

[5] John Doe's pleadings quote directly from several of the uniform act's enumerated "unfair or deceptive acts or practices."  (Doc. 33 ¶ 109; Doc. 34 ¶ 109).  However, his opposition papers focus exclusively on the "catch-all" provision, see 73 PA. STAT. AND CONS. STAT. ANN. § 201-2(4)(xxi), and the court analyzes his claim in kind.

reliance on that act; and (3) a resulting "ascertainable loss." <u>Slapikas v. First Am.
Title Ins. Co.</u>, 298 F.R.D. 285, 292 (W.D. Pa. 2014) (citing <u>Seldon v. Home Loan
Servs.</u>, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)).  An act is "deceptive" under the law
when it has a "capacity or tendency to deceive."  <u>Commw. *ex rel* Corbett v. Peoples
Ben. Servs., Inc.</u>, 923 A.2d 1230, 1235-36 (Commw. Ct. Pa. 2007) (citation omitted).
Unlike a claim for fraud, a claim under the uniform law's catch-all provision does
not require proof of deceptive intent.  <u>Id.</u> at 1236.

   As a threshold matter, the Unfair Trade Practices and Consumer Protection
Law creates a cause of action only for those individuals who "purchase[] or lease[]
goods or services" as a result of conduct deemed unlawful thereunder.  73 PA. STAT.
AND CONS. STAT. ANN. § 201-9.2; <u>see</u> <u>also</u> <u>Reed v. Chambersburg Area Sch. Dist.</u>, 951
F. Supp. 2d 706, 724-25 (M.D. Pa. 2013).  John Doe did not purchase or lease any
product or service from Malibu.  Assuming the law applies notwithstanding this
infirmity, John Doe's claim nonetheless fails.  His contention that he reasonably
believed *all* of Malibu's content to be free based on marketing of *some* of its content
on free websites cannot square with his knowledge that Malibu charged monthly
fees for a subscription-based service.  (<u>See</u> <u>id.</u> ¶ 46).  Nor does John Doe specify
what "actual damages" he suffered as a result of his alleged confusion.  (<u>Id.</u> ¶ 113).
The court will dismiss John Doe's claim under pursuant to Pennsylvania's Unfair
Trade Practices and Consumer Protection Law.

**IV.**   **Conclusion**

John Doe's *allegata* may offer him a defense to Malibu's pending copyright infringement claim.  But his attempt to transform affirmative defenses into separate causes of action fails.  Moreover, because the <u>Noerr-Pennington</u> doctrine creates an insurmountable legal bar to John Doe's claims, leave to amend would be futile.  <u>See</u> <u>Fletcher-Harlee Corp.</u>, 482 F.3d at 251.  The court will grant the motions (Docs. 36, 40, 69) to dismiss by Malibu, Pelissier-Field, and Attorney Fiore and dismiss John Doe's counterclaim and third-party complaint with prejudice.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       March 3, 2017