# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | : | **CIVIL ACTION NO. 4:15-CV-2281** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN DOE subscriber assigned IP** | : | |
| **Address 71.58.216.197,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Malibu Media, LLC, commenced the above-captioned action against John Doe, asserting one count of copyright infringement pursuant to the United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* Before the court are the parties' cross-motions for summary judgment.

## I. Factual Background and Procedural History[1]

Malibu Media, LLC ("Malibu") is a producer and online distributor of adult pornographic videos. (See Doc. 126-2 ¶ 1). The company is jointly owned by Colette Pelissier-Field ("Pelissier-Field") and Brigham Field. (Doc. 7-1 ¶ 2). Malibu offers its works for download through a subscription-based website under the brand name

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 122-2, 126-2, 131-1, 140-1). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

"X-Art." (See generally Doc. 122-8; see also Doc. 7-1 ¶ 4).  Malibu is the registered

owner of 20 copyrights[2] concerned in this litigation, which we will sometimes refer

to as the "copyrights-in-suit."  (Doc. 122-2 ¶¶ 1-4).  John Doe does not contest the

validity of Malibu's copyright registrations.  (See id. ¶¶ 4-5).[3]

### A.    Content Partnerships with Tubesites

As part of its advertising strategy, "[a] few years ago," Malibu uploaded

samples of its movies along with some full-length versions of its "older productions"

to third-party "tubesites" hoping to drive traffic to its own website and to increase

subscriptions.  (Doc. 122-2 ¶ 11; Doc. 122-4 ¶ 3).  "Tubesites" are websites modeled

after YouTube.com, with content consisting primarily of user-uploaded videos and

---

[2] Those copyrights are for the following videos: "Tantric Massage," "One
Night Stand," "The Rich Girl Part #2," "Just the Three of Us," "One Show For
Each," "Four Ways," "Sneaking In," "A Little Rain Must Fall," "Sparks," "Tie
Her Up For Me," "Angelica means Angel," "Sweet Awakening," "Rock Me Baby,"
"Fashion Models," "Chloe Loves Carl Part 2," "Give Me More Part 2," "Above The
Air," "Coming Late," "Sexy En Noir," and "In for the Night."  (Doc. 122-2 ¶ 3 (citing
Doc. 1-1); see Doc. 122-5).

[3] John Doe responds to these paragraphs (and many others) of Malibu's Rule
56.1 statement by simply stating that he is "without knowledge to either admit [or]
deny said paragraph."  (See Doc. 140-1 ¶¶ 1-3).  At this juncture, we have given John
Doe several opportunities to comply with Rule 56.1.  (See Docs. 135, 139, 142).  We
have instructed that responsive statements of fact must include citations to record
evidence supporting any assertion that a genuine issue remains to be tried, and
we have admonished that noncompliance with Rule 56.1 will result in the court
deeming Malibu's statement to be admitted.  (See Doc. 139; Doc. 142 ¶ 2).  Nor
has Malibu properly complied with Rule 56.1 concerning responsive statements.
Malibu's response does not admit, deny, or otherwise directly respond to John
Doe's enumerated paragraphs.  (See Doc. 131-1).  Malibu instead copies and pastes
from its own Rule 56.1 statement those paragraphs which it believes are relevant to
statements offered by John Doe.  (Compare id. with Doc. 122-2).  Rule 56.1 permits
the court to deem parties' statements of material facts undisputed by virtue of such
noncompliant responses.  Despite the deficiencies in the parties' submissions, we
have thoroughly reviewed the parties' Rule 56.1 documentation and have
independently considered the entire record.

an interface allowing user engagement and participation in the form of "comments" and "likes."  Some of these tubesites provide an option to download copies of videos posted by other users.  (See, e.g., Doc. 122-2 ¶ 39; Docs. 126-12 to -31).  Examples of tubesites providing adult pornographic content are Pornhub.com, Redtube.com, Youporn.com, and Xhamster.com.  (See Doc. 126-2 ¶¶ 5-6; Doc. 126-9).

Many of these tubesites offer "content partner" programs.  (See, e.g., Doc. 126-9; see also Doc. 122-2 ¶ 12).  Malibu was a content partner with several tubesites, including Pornhub, Redtube, Youporn, and Xhamster.[4]  (See Doc. 126-9; see also Doc. 122-2 ¶ 12).  The parties dispute what it means to be a "content partner" with a tubesite.  Malibu maintains that, through the content partnership, it was able to "maintain its copyrights while directing traffic to its subscription-based website." (Doc. 122-2 ¶ 12).  John Doe points to the terms of use for several of the tubesites carrying Malibu's content which warn that, although user-uploaders retain all ownership rights for uploaded content, they also grant certain licenses to both the tubesite and the tubesite's users.  (See Doc. 126-2 ¶ 4; Doc. 126-60).

Malibu does not recall and has not retained records of which full-length videos it uploaded to tubesites as part of the content partner programs.  (Doc. 126-2 ¶¶ 4, 8; Doc. 126-33 at 14-15).  All of the copyrighted videos at issue in this litigation were available for download on various tubesites.  (Doc. 126-2 ¶ 11; see Docs. 126-12 to -31).  Malibu "denies that it has posted all of" the copyrights-in-suit to tubesites, but acknowledges that it may have posted some of them "for promotional reasons

---

[4] Malibu disputes that it authorized certain advertisements on Pornhub, Redtube, Youporn, or Xhamster, but does not deny that it was previously a content partner of those websites.  (See Doc. 122-2 ¶¶ 12-14).

under the expectation that the videos could not be downloaded and distributed by the website[']s viewers." (Doc. 126-62 at 10-11). Malibu does not deny that Pelissier-Field left a comment on one of the videos at issue on the Youporn tubesite under the handle "Colette X-Art." (Doc. 126-2 ¶ 9; Doc. 131-1 ¶ 9; <u>see</u> Doc. 126-17 at 5). Malibu did not itself advertise its works for free to download or distribute on either its own website or on third-party tubesites. (Doc. 122-2 ¶ 13).

### B. X-Cash Agents

Malibu also promotes its content through use of "X-Cash agents."[5] These agents sign up as "affiliates" of Malibu on X-Cash.com. (<u>See</u> Doc. 126-2 ¶ 14; Doc. 126-34 at 2). The agents are then provided access to certain of Malibu's content for sharing on their own websites with advertisements for and links redirecting visitors to X-Art.com. (Doc. 126-2 ¶ 14; Doc. 126-34 at 2). Malibu pays the agents 50 percent "of any sales directly from the billers." (Doc. 126-34 at 2). It is unclear from the record whether Malibu made any of the copyrights-in-suit available to these agents via X-Cash.com, but John Doe has adduced dozens of screenshots from tubesites and torrent sites suggesting that X-Cash agents may have uploaded various of Malibu's videos, including some of the copyrights-in-suit, to both tubesites and

---

[5] Malibu does not directly respond to John Doe's statement of facts as pertains the X-Cash program, again flouting Local Rule 56.1. (Doc. 131-1 ¶ 15); <u>see</u> LOCAL RULE OF COURT 56.1. Malibu reiterates broadly that it has never "authorized anyone else to distribute its works through the BitTorrent protocol." (Doc. 131-1 ¶ 15). To the extent supported by the record, we accept John Doe's allegations regarding the X-Cash program as true for purposes of the instant motions. We note that at least some of the information provided by John Doe concerning the program derives from Malibu's own responses to interrogatories. (Doc. 126-34 at 2, 9).

BitTorrent websites.[6] (See Docs. 126-50 to -59). Malibu does not directly respond to this evidence, but broadly denies that it ever uploaded its own work to the BitTorrent network or "authorized anyone else to distribute its works through the BitTorrent protocol." (Doc. 131-1 ¶ 15).

### C. John Doe's Downloads

John Doe testified that he discovered Malibu's videos on the BitTorrent network while searching for a shareware computer design program of a similar name. (See Doc. 122-7, John Doe Dep. 11:15-12:19, 13:16-14:18, 23:6-12 ("Doe Dep.")). He explained that while searching for the design program, the torrent search engine displayed results for X-Art videos. (Id.) He claimed that he then performed a Google search for the term "X-Art" and discovered torrent websites and tubesites offering free downloads of many of X-Art's videos. (Id.) John Doe further claimed that he reviewed the tubesites' terms of service and was left with the impression that Malibu and X-Art had given broad permission to others to distribute and use their videos for free. (Id. at 16:4-17:22).

John Doe admits that he downloaded 19 of the 20 copyrights-in-suit using the BitTorrent protocol. (Doc. 140-1 ¶ 6; see Doc. 33 ¶ 23; Doc. 126 at 16). He denies downloading the video "In for the Night." (Doc. 33 ¶ 23; Doe Dep. 15:15-16:3). John Doe testified that "[i]t was just easier to [download them] via BitTorrent than it is

_____

[6] As we have previously observed, BitTorrent is a "common peer-to-peer file sharing system." Malibu Media, LLC v. Doe, 238 F. Supp. 3d 638, 641 (M.D. Pa. 2017) (Conner, C.J.) (citation omitted). Unless a BitTorrent user deactivates the program's automatic "seeding" function, the BitTorrent client will provide for continuous "seeding" of the file, making it available to other BitTorrent users for download. (See Doc. 122-2 ¶¶ 16-18).

from the distribution websites." (Doe Dep. 40:2-7). John Doe never communicated or had a relationship with Malibu before he downloaded its works via BitTorrent. (Doc. 122-2 ¶ 7).

### D. Procedural History

On November 25, 2015, Malibu commenced this action against John Doe, asserting a claim for violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq.*, subsequently filing an amended complaint on April 14, 2016. Therein, Malibu contends that it is the registered owner of the copyrights-in-suit and that John Doe downloaded, copied, and redistributed the copyrighted works without authorization. The court has permitted John Doe to proceed by pseudonym for purposes of the pretrial phases of this litigation. Malibu Media, LLC v. Doe, No. 4:15-CV-2281, 2016 WL 524248, at *3 (M.D. Pa. Feb. 10, 2016).

John Doe's responsive pleading rejects the bulk of Malibu's allegations and raises ten affirmative defenses. John Doe also lodged a number of counterclaims against Malibu, its attorney, and its principals, including Pelissier-Field, premised on his belief that Malibu knowingly defrauded John Doe and the public by holding itself out as a provider of free adult video content only to later bring infringement actions against those downloading that content. We dismissed all counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). We determined first that each counterclaim was barred by Noerr-Pennington immunity, which shields those who petition the government for relief unless they know their lawsuit to be "objectively baseless." Malibu Media, 238 F. Supp. 3d at 643-45 (citing United Mine Workers v. Pennington, 381 U.S. 657 (1965); E. R.R. Presidents Conference v. Noerr Motor

<u>Freight, Inc.</u>, 365 U.S. 127 (1961)).  We further determined, assuming *arguendo* that immunity did not apply, that John Doe had failed to offer any allegations to support his contention that Malibu "intended . . . to entrap" him and others for purposes of common law fraud; that Malibu engaged in criminal extortion, fraud, or deception under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1963 *et seq.*; or that Malibu deceived him into purchasing or leasing goods in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. & CONS. STAT. ANN. §§ 201-1 to -9.3.  <u>See</u> <u>Malibu Media</u>, 238 F. Supp. 3d at 646-48.

Following a period of discovery and a number of discovery disputes, the parties filed the instant cross-motions for summary judgment.  The motions are fully briefed and ripe for disposition.

## II.    <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-

57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. <u>See</u> <u>Pappas</u>, 331 F. Supp. 2d at 315.

Federal Rule of Civil Procedure 56(c) requires movants and nonmovants alike to support factual assertions by "citing to particular parts of materials in the record" or otherwise "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. <u>See</u> FED. R. CIV. P. 56(e)(2). The Local Rules of Court undergird these principles by requiring Rule 56 motions to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. The Local Rule also requires the party opposing summary judgment to file a responsive statement identifying genuine issues to be tried and mandates that both parties' submissions "include reference to the parts of the record that support the statements." <u>Id.</u> Consistent with Federal Rule 56, the Local Rule allows a court to deem a moving party's statement to be admitted when it is not properly "controverted by the statement required to be served by the opposing party." <u>Id.</u>; <u>see</u> <u>Thomas v. United States</u>, 558 F. Supp. 2d 553, 558-59 (M.D. Pa. 2008). In resolving the instant motion, the court has reviewed the parties' statements and has independently considered the entire record.

Courts are permitted to resolve cross-motions for summary judgment concurrently. <u>See</u> <u>Lawrence v. City of Philadelphia</u>, 527 F.3d 299, 310 (3d Cir. 2008);

see also Johnson v. Fed. Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014);

10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d

ed. 2015).  When doing so, the court is bound to view the evidence in the light most

favorable to the non-moving party with respect to each motion.  FED. R. CIV. P. 56;

Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245

(3d Cir. 1968)).

## III.    Discussion

Malibu asserts a single copyright infringement claim, identifying 20 of its

copyrighted works that were allegedly infringed by John Doe.  John Doe raises

ten interrelated affirmative defenses in answer to Malibu's complaint.  We begin

by examining the merits of Malibu's copyright infringement claim.

### A.    Copyright Infringement

Malibu must establish two elements to prevail on its claim for copyright

infringement: (1) ownership of a valid copyright and (2) unauthorized copying of

original elements of its work.  Tanksley v. Daniels, 902 F.3d 165, 172-73 (3d Cir.

2018) (quoting Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307

F.3d 197, 206 (3d Cir. 2002)).  The record is uncontroverted that Malibu owns a valid

copyright for each video identified in its amended complaint.  (See Doc. 122-2 ¶¶ 1-5;

Doc. 140-1 ¶¶ 1-5).  Accordingly, there is no genuine dispute of material fact as to the

first element of Malibu's copyright infringement claim.

"Copying" for purposes of the second element is "the act of infringing any of

the exclusive rights that accrue to the owner of a valid copyright, as set forth in 17

U.S.C. § 106."  Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005)

(citing <u>Ford Motor Co. v. Summit Motor Prods., Inc.</u>, 930 F.2d 277, 291 (3d Cir. 1991)).  Section 106 grants six exclusive rights to copyright owners, including the right "to reproduce the copyrighted work in copies" and "to distribute copies . . . of the copyrighted work to the public."  17 U.S.C. § 106(1), (3).  Malibu contends that John Doe violated the first of these rights by downloading its copyrighted videos via BitTorrent and the second by both making available for distribution and in fact distributing the videos through the BitTorrent network.

John Doe admits that he "did or attempted to download nineteen (19) of the twenty (20)" videos identified in the appendix to Malibu's amended complaint via BitTorrent.  (Doc. 140-1 ¶ 6; <u>see</u> Doc. 33 ¶ 23; Doc. 126 at 16).  John Doe denies that he ever downloaded or redistributed the twentieth video, "In for the Night."  (Doc. 33 ¶ 23; Doe Dep. 15:15-16:3).  As to the videos John Doe admits downloading, John Doe does not oppose or respond to Malibu's arguments regarding direct copyright infringement, (<u>compare</u> Doc. 122 at 3-6 <u>with</u> Doc. 127), nor does he move separately for summary judgment on the merits of Malibu's infringement claim, (<u>see</u> Docs. 123, 126).  The uncontroverted record evidence establishes that John Doe did download, offer for redistribution, and redistribute 19 of the 20 copyrights-in-suit.  With the exception of the disputed video "In for the Night," there is no genuine issue for trial and Malibu has established the second element of its copyright infringement claim.

Malibu has not directed the court to any evidence—contested or otherwise— showing that John Doe in fact downloaded or redistributed the contested video "In for the Night."  Absent such evidence, we cannot find as a matter of law that Malibu is entitled to summary judgment on the question of infringement as to this video.

John Doe, however, has not cross-moved for summary judgment on the basis of failure of proof. Consequently, whether John Doe unlawfully copied or distributed "In for the Night" remains an issue for trial.

### B. <u>Affirmative Defenses</u>

As we have observed throughout this litigation, John Doe effectively concedes copyright infringement (with the exception noted above) and leans almost exclusively on his affirmative defenses. The provenance and substance of each defense is John Doe's belief that Malibu, through its conduct, authorized both John Doe and the public at large to download and redistribute its works from anywhere on the internet. We will address each affirmative defense *seriatim*.

#### 1. *Abandonment*

John Doe first contends that Malibu abandoned its copyrights by entering into content partner relationships with tubesites and uploading its works thereto knowing that such sites offer free downloads of uploaded works to users. (<u>See</u> Doc. 33 ¶ 34). Both parties move for summary judgment on this defense.

A copyright owner will be found to have abandoned its copyright "only if there is an intent by the copyright proprietor to surrender rights in his work." <u>Dam Things from Denmark v. Russ Berrie & Co.</u>, 290 F.3d 548, 560 (3d Cir. 2002) (quoting 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.06 [hereinafter, "NIMMER ON COPYRIGHT"]). "It is undisputed [that] there must be either an act, or a failure to act, from which we can readily infer an intent to abandon the right." <u>Id.</u> (citing 4 NIMMER ON COPYRIGHT § 13.06). Rights afforded copyright owners by Section 106 are "divisible," and thus a copyright owner may

abandon one or more of those rights while retaining the others. <u>Columbia Pictures</u> <u>Indus., Inc. v. Aveco, Inc.</u>, 800 F.2d 59, 64 (3d Cir. 1986). Whether a copyright owner's actions evince an intent to abandon its copyright is a highly factual issue. <u>See</u>, <u>e.g.</u>, <u>Malibu Media, LLC v. Does 1, 13, 14, & 16</u>, No. 12-2078, 2013 WL 1702549, at *6 (E.D. Pa. Mar. 6, 2013) (citing <u>Capitol Records, Inc. v. Naxos of Am., Inc.</u>, 372 F.3d 471, 483-84 (2d Cir. 2004)).

Genuine disputes of material fact preclude summary judgment for either party on this affirmative defense. Viewing the record in the light most favorable to Malibu, a jury could readily find that Malibu is a dedicated and diligent defender of its copyrights, that it was unaware that tubesites would offer its copyrighted material for free download and did not authorize the tubesites to do so, and that it accordingly did not abandon or waive its right to enforce the copyrights-in-suit.

But viewing the evidence favorably to John Doe, a jury could also reasonably conclude that Malibu knew the tubesites would offer its works for free download but uploaded its videos anyway, intending to give some of them away as part of its promotional strategy. John Doe has adduced evidence that Malibu or its agents may have uploaded each of the full-length copyrights-in-suit to various tubesites. Malibu concedes that it may have done so for promotional purposes, but "under the expectation that the videos could not be downloaded and distributed by the website[']s viewers." (Doc. 126-62 at 11). Yet a jury could infer from co-owner Pelissier-Field's engagement with users on tubesites that she—and, by extension, Malibu—was familiar with the capabilities of those sites, including the download function. (<u>See</u> Doc. 126-2 ¶ 9; Doc. 126-17 at 5). A reasonable jury may also find it

compelling that Malibu introduced these videos into the digital ether without executing any type of written agreement with the tubesites or retaining a single record of which videos were uploaded to which tubesites. (Doc. 126-2 ¶¶ 4, 8; Doc. 126-33 at 14-15). Malibu has also failed to engage in any meaningful way with John Doe's evidence and arguments regarding use of X-Cash agents to promote Malibu's material. John Doe has adduced evidence establishing, by Malibu's own admission, that such a program exists, although the scope and nature of the X-Cash program and how it operates are not entirely clear. The evidence on this issue is thin but, at this juncture, it is unanswered by Malibu.

To be clear, we do not conclude today that Malibu *has* abandoned its rights for any of the copyrights-in-suit. At trial, John Doe will need to convince the jury that Malibu intentionally abandoned its rights to copy and to distribute as to *each* of the copyrights-in-suit. As we previously indicated, a finding by the jury that Malibu abandoned its rights to enforce one or more copyrights does not mean that Malibu's entire library of works is free for all internet users to download and share. Malibu Media, 238 F. Supp. 3d at 646. We hold only that—based on an equivocal record compounded by less-than-pellucid Rule 56.1 statements—genuine disputes of fact remain for trial as to whether Malibu abandoned its right to enforce any or all of the copyrights-in-suit.

### 2. *Actual or Implied License*

John Doe next raises affirmative defenses of actual or implied license. His argument in support of these defenses is opaque. We construe John Doe's responsive pleading and instant briefing as asserting that Malibu (1) granted him an

actual license to reproduce and distribute its copyrighted works through the terms

of service on tubesites to which Malibu uploaded its videos and (2) granted him (and

"anyone in the world with access to a computer") an implied license to copy and

distribute its copyrighted works by developing content partner relationships with

and uploading its videos to tubesites.  (See Doc. 33 ¶ 37; Doc. 126 at 17-23; Doc. 127

at 8-11).  Both parties move for summary judgment on the actual or implied license

defenses.

### a. __Actual License__

The Rule 56 record is devoid of evidence that Malibu granted John Doe

an express or actual license to download its copyrighted works via BitTorrent.  In

support of this defense, John Doe points to terms of use for a number of tubesites,

including Pornhub, Redtube, and Youporn.  The terms of use provide, in pertinent

part, as follows:

> For clarity, you retain all of your ownership rights in your
> Content.  However, by submitting Content to the Website,
> you hereby grant the Website a worldwide, irrevocable,
> perpetual, non-exclusive, royalty-free, sublicenseable and
> transferable license to use, exploit, reproduce, distribute,
> prepare derivative works of, display, communicate, and
> perform the Content in connection with the Website's (and
> its successors' and affiliates') business, including without
> limitation for promoting and redistributing part or all of
> the Website (and derivative works thereof) in any media
> formats and through any media channels.  You also waive
> to the full extent permitted by law any and all claims
> against us related to moral rights in the Content.  In no
> circumstances will we be liable to you for any exploitation
> of any Content that you post.  You also hereby grant each
> user of the website a non-exclusive, royalty free license to
> access your Content *through the Website*, and to use,
> reproduce, distribute, display, communicate and perform

such content *as permitted through the functionality of the Website* and under these Terms of Services. . . .

(Doc. 126-60 at 2-4).[7]  John Doe posits that, by uploading videos to the tubesites under these terms of use, "Malibu granted broad express rights to reproduce and distribute its videos without further restrictions."  (Doc. 126 at 17-20).

Assuming for the sake of argument that Malibu uploaded each of the disputed videos in full length to the various tubesites, we nonetheless must reject John Doe's actual license defense.  The terms of use establish that Malibu, upon

_____

[7] We note that Malibu also directs the court to a "download license" provision added to Pornhub's terms of use sometime after the infringement alleged in this case.  That license provides:

> If the Website allows you to download or otherwise copy our Works, you are not buying or being gifted copies thereof.  Instead, you are licensing a limited, revocable, non-sublicensable, and non-exclusive right to possess and use the copies for personal, non-commercial use, subject to specific terms and conditions (the "Download License").  Under this Download License you may not thereafter reproduce, distribute, communicate to the public, make available, adapt, publicly perform, or publicly display the Website and Works or any adaptations thereof unless expressly set forth herein.  Such conduct would exceed the scope of your Download License and constitute copyright infringement. . . .

(Doc. 101-3 at 2).  Malibu avers that this restrictive language is indicative of Pornhub's intent that its users are not authorized to "reproduce, distribute, or make available *any works* downloaded from the website."  (Doc. 131 at 10).  The limitations of this license are of dubious relevance given that Malibu concedes the provision did not exist at the time John Doe downloaded and redistributed the copyrights-in-suit.  (Doc. 122-2 ¶ 45).  Moreover, the terms of Pornhub's license refer to "our Works"—quite plainly referencing  Pornhub's *original* works—and not to "Content Posted by Users," which the terms of use address separately.  (Doc. 101-3 at 2 (defining "our Works" as "content we own, authored, created, purchased, or licensed" and "Content" as user-submitted "content, data, information, videos, images, recordings, materials, code or content of any kind")).

15

uploading a video, grants a broad and irrevocable license to the tubesite as well as a limited license to the tubesites' users. The terms of use grant a license to users to access user-uploaded content (such as Malibu's videos) "*through the Website*" and "to use, reproduce, distribute, display, communicate and perform such content *as permitted through the functionality of the Website.*" (Doc. 126-60 at 2-4 (emphasis added)). That limited user license has no application to John Doe, who concedes that he accessed Malibu's content and redistributed same through torrent sites rather than tubesites. There is no evidence in the Rule 56 record from which a juror could find that Malibu granted an express license to John Doe to download its videos from any source of his choosing. The court will grant summary judgment to Malibu on John Doe's actual license affirmative defense.

### b.   <u>Implied License</u>

John Doe also asserts that Malibu, by its conduct, granted him an implied license to download and redistribute the copyrights-in-suit. Because an exclusive copyright license transfers an ownership interest, it must be in writing. <u>MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.</u>, 952 F.2d 769, 778-79 (3d Cir. 1991) (citing 3 NIMMER ON COPYRIGHT § 10.03[A]); <u>Beholder Prods., Inc. v. Catona</u>, 629 F. Supp. 2d 490, 493 (E.D. Pa. 2009) (citing <u>MacLean Assocs., Inc.</u>, 952 F.2d at 778-79). A nonexclusive license, however, may be granted in writing, orally, or by implication through conduct. <u>MacLean Assocs., Inc.</u>, 952 F.2d at 778-79 (quoting 3 NIMMER ON COPYRIGHT § 10.03[A]). In assessing whether an implied license exists, we must undertake "an objective inquiry into the facts." <u>Marino v. Usher</u>, 673 F. App'x 125, 130 (3d Cir. 2016) (nonprecedential) (citing <u>John G. Danielson, Inc.</u>

v. Winchester-Conant Props., Inc., 322 F.3d 26, 42 (1st Cir. 2003)).  "[T]he private hopes of the creator are not relevant."  Id.

The Third Circuit Court of Appeals has indicated that deliberately conveying a copyrighted work to the defendant for further distribution is strong evidence of an implied license.  See MacLean Assocs., Inc., 952 F.2d at 779 (quoting Effects Assocs. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990)).  However, the court otherwise has not had occasion to establish clear standards for determining when conduct gives rise to license by implication.  See Grant Heilman Photography, Inc. v. McGraw-Hill Cos., 28 F. Supp. 3d 399, 407 (E.D. Pa. 2014) (citations omitted).

Some courts have adopted a three-factor test first articulated by the Seventh Circuit Court of Appeals in I.A.E., Inc. v. Shaver, 74 F.3d 768 (7th Cir. 1996).[8]  The Shaver test provides that an implied license arises when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work."  Shaver, 74 F.3d at 776 (citing Effects Assocs., 908 F.2d at 558-59).  Other courts of appeals have applied a different formulation, examining the nature and duration of the parties' relationship as well as whether the copyright owner used written contracts preserving control over the work and whether the owner's conduct suggested that

---

[8] See, e.g., Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Scharle, 184 F. App'x 270, 275 (3d Cir. 2006) (nonprecedential); Ahadams & Co. v. Spectrum Health Servs., Inc., 40 F. Supp. 3d 456, 462 (E.D. Pa. 2014); Beholder Prods., 629 F. Supp. 2d at 494; see also Asset Mktg. Sys., Inc. v. Gagnon, 542 F.3d 748, 754-55 (9th Cir. 2009); Atkins v. Fischer, 331 F.3d 988, 991-92 (D.C. Cir. 2003).

the other party may use the work without the owner's involvement or consent.  See
Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 516 (4th Cir. 2002); see
also John G. Danielson, 322 F.3d at 41 (quoting Nelson-Salabes, 284 F.3d at 516).

The leading treatise on copyright law cautions that these tests, while
instructive, are neither exhaustive nor dispositive.  See 3 NIMMER ON COPYRIGHT
§ 10.03[A][7].  From *Nimmer* and the many decisions on the issue of implied
licenses, it appears that two requirements are paramount: proof of an intent by the
alleged licensor to grant permission with respect to the work in question, and
"reasonably clear" proof of the terms of the license, "including the identity of the
licensee."  Id.  At bottom, a court must look to "the totality of the parties' conduct"
to determine whether it is indicative of "contractual intent."  Id.; Ahadams & Co., 40
F. Supp. 3d at 462 (quoting John G. Danielson, 322 F.3d at 42).

John Doe asserts that Malibu's content partnerships with various tubesites
give rise to a nonexclusive license—extending to "anyone in the world" the right to
"copy, publish, and distribute" Malibu's copyrighted works.  (See Doc. 33 ¶ 37).  We
reject at the outset any suggestion that, by placing a portion of its collection on a
limited number of tubesites, Malibu impliedly licensed every person in the world
to download its entire collection of copyrighted materials from any source on the
internet.  As to John Doe individually, the Rule 56 record contains no evidence
indicative of an implied licensure relationship by which Malibu authorized John
Doe to download and redistribute its copyrighted works through the BitTorrent
network.  John Doe admits he had no communication or relationship with Malibu
before he downloaded its works via BitTorrent.  (Doc. 122-2 ¶ 7).  And he adduces

no evidence of any statement or specific conduct by Malibu toward him suggesting

an intent to create a licensor-licensee relationship. The record, construed in a light

most favorable to John Doe, contains none of the traditional indicators of implied

license.[9] We will grant Malibu's motion for summary judgment on this defense.

### 3. *Unclean Hands*

John Doe asserts an affirmative defense of unclean hands. He avers that

he was misled by advertisements on tubesites promoting Malibu's content as "free"

because he could not have known that videos distributed by Malibu's own content

partners were unauthorized. (See Doc. 33 ¶ 35). Both parties move for summary

judgment on this affirmative defense.

In the Third Circuit, a defendant pursuing an unclean hands defense must

present "clear, convincing evidence" of "'egregious' misconduct" by the plaintiff.

Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City, 383 F.3d 110, 129 (3d

Cir. 2004); see Merisant Co. v. McNeil Nutritionals, LLC, 515 F. Supp. 2d 509, 531

(E.D. Pa. 2007) (quoting Citizens Fin. Grp., 383 F.3d at 129). This standard generally

requires proof of "fraud, unconscionability, or bad faith." Ballas v. Tedesco, 41 F.

Supp. 2d 531, 542-43 (D.N.J. 1999) (quoting S & R Corp. v. Jiffy Lube Int'l, Inc., 968

---

[9] John Doe cites to Keane Dealer Services, Inc. v. Harts, 968 F. Supp. 944
(S.D.N.Y. 1997), for the proposition that an implied license arises where a copyright
owner knows of and is silent in response to copying of its works by another. As a
threshold matter, Malibu was not silent in response to John Doe's copying; *per
contra*, it instituted this lawsuit promptly upon discovering the alleged infringement
set forth in the amended complaint. Moreover, Keane is patently distinguishable:
uncontroverted record evidence established that the plaintiff knew of and "chose to
take no action against" the defendant and, in fact, answered questions posed by the
defendant about how to use the software at issue. See id. at 946-47. Keane is
relevant, if at all, for its stark contrast to the record in the matter *sub judice*.

F.2d 371, 377 n.7 (3d Cir. 1992)). In copyright infringement actions, the defense "is recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." <u>FMC Corp. v. Control Sols., Inc.</u>, 369 F. Supp. 2d 539, 584 (E.D. Pa. 2005) (quoting 4 NIMMER ON COPYRIGHT § 13.09[B]). *Nimmer* identifies as examples cases in which a plaintiff deliberately falsifies a court order, falsifies evidence, or misrepresents the scope of a copyright to the court or the opposing party. 4 NIMMER ON COPYRIGHT § 13.09[B].

At the Rule 12(b)(6) stage, we dismissed John Doe's fraud counterclaim based on his failure to allege any nefarious intent or misconduct by Malibu. <u>Malibu Media</u>, 238 F. Supp. 3d at 646. We must reject his unclean hands defense for the same reason at this Rule 56 stage. The record contains no evidence from which a trier of fact could reasonably conclude that Malibu intentionally misled John Doe and the general public. And none of the circumstantial evidence adduced by John Doe suggests bad faith or unconscionability by Malibu in its relationships with the tubesites or its apparent participation in the X-Cash agent program. The court will grant summary judgment to Malibu on John Doe's unclean hands defense.

### 4. *Estoppel*

John Doe contends that Malibu is estopped from seeking relief for copyright infringement on two grounds. He argues, *first*, that Malibu engaged in false advertising under federal and statutory law, and *second*, that by placing (or allowing its agents to place) its content on tubesites or torrent sites, Malibu represented to downstream users that the uploaded content was free for further

downloading and distribution. (See Doc. 33 ¶ 38; Doc. 126 at 27-38). Both parties move for summary judgment on John Doe's estoppel defense.

The defense of equitable estoppel is available in copyright infringement actions. See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. __, 134 S. Ct. 1962, 1977 (2014). To prevail, an alleged infringer must establish that he "detrimentally relie[d] on the copyright owner's deception." Id. Four elements govern an estoppel defense: (1) knowledge by the copyright owner of the infringing conduct, (2) intent by the copyright owner that its conduct be acted upon or action by the copyright owner giving the defendant reason to believe such intent exists, (3) ignorance by the defendant of the true facts, and (4) reliance by the defendant to his detriment. 4 NIMMER ON COPYRIGHT § 13.07[A]; see also Le v. City of Wilmington, 736 F. Supp. 2d 842, 852 & n.11 (D. Del. 2010) (citation omitted); Energy Intelligence Grp., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, No. 11-428, 2013 WL 4648333, at *12 (W.D. Pa. Aug. 29, 2013) (same). Thus, a copyright defendant can meet his burden by proving that the owner "was aware of the infringing conduct and yet acted in a way that induced the infringer to reasonably rely upon such action to his detriment." Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 555 (D.N.J. Aug. 7, 2003) (citations omitted). The "gravamen" of the estoppel defense is "misleading and consequent loss." Petrella, 134 S. Ct. at 1977.

John Doe's estoppel theory rests on a faulty premise. He remonstrates that he justifiably relied on Malibu's representations—to wit: the presence of its content on tubesites, its advertisements thereon, and uploads of Malibu's content by

Malibu's agents to torrent websites—to conclude that he was authorized to download and distribute content on the BitTorrent network. John Doe might have been able to prevail on an estoppel defense had he downloaded the videos from tubesites. But he could not reasonably have believed that Malibu's relationship with the tubesites permitted him to download and redistribute material through *torrent websites*. John Doe has not shown that Malibu was aware of and acquiesced in his conduct, or in the infringing conduct of other BitTorrent users.

As to John Doe's claim that his conduct was informed by Malibu's X-Cash agents uploading its content to torrent websites, John Doe has neither alleged nor proved that he was aware of any agency relationship at the time he downloaded and redistributed Malibu's content from BitTorrent. Accordingly, no reasonable juror could conclude that John Doe relied on the conduct of the X-Cash agents at the time he infringed the copyrights-in-suit. Malibu is entitled to summary judgment on John Doe's estoppel defense.

### 5. *Copyright Misuse*

John Doe claims abuse or misuse of copyright as an additional affirmative defense. (See Doc. 33 ¶ 36). John Doe's misuse of copyright defense is premised on intimations that he was entrapped by Malibu—specifically, that Malibu "entrap[s] innocent individuals via false advertising" and selectively pursues infringement

actions against only those individuals who download its content via BitTorrent. (See id.)  Both parties move for summary judgment on this defense.[10]

The defense of copyright misuse applies when a copyright holder abuses its rights in a manner "contrary to the public interest."  <u>Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.</u>, 342 F.3d 191, 204 (3d Cir. 2003) (quoting <u>Morton Salt Co. v. G.S. Suppiger Co.</u>, 314 U.S. 488, 492 (1942)).  The defense does not invalidate the copyright but rather prohibits its enforcement for the duration of the misuse.  <u>FMC Corp.</u>, 369 F. Supp. 2d at 581 (quoting <u>Practice Mgmt. Info. Corp. v. Am. Med. Ass'n</u>, 121 F.3d 516, 520 n.9 (9th Cir. 1997)).  Misuse most often manifests in "some form of anti-competitive behavior."  <u>Video Pipeline, Inc.</u>, 342 F.3d at 204.  The Third Circuit indicated that copyright misuse might occur, for example, when a person obtains a copyright to a work written about himself to prevent others from publishing a biography about him.  <u>See</u> <u>id.</u> at 205 (citing <u>Rosemont Enters., Inc. v. Random House, Inc.</u>, 366 F.2d 303, 311 (2d Cir. 1966)).  The doctrine is principally aimed at avoiding anticompetitive conduct that contravenes the goal of copyright law—"to stimulate artistic creativity for the general public good."  <u>Video Pipeline, Inc.</u>, 342 F.3d at 204 (quoting <u>Sony Corp. of Am. v. Universal City Studios, Inc.</u>, 464 U.S. 417, 432 (1984)).

---

[10] John Doe did not respond to Malibu's motion for summary judgment as to this affirmative defense.  (<u>See</u> Doc. 127).  Nor did he respond to arguments Malibu raises in its brief opposing his own motion on the subject.  (<u>See</u> Doc. 133). Nonetheless, because John Doe invokes the defense in his own Rule 56 motion, we decline to deem the defense to be waived.

As noted *passim*, the record is devoid of evidence supporting John Doe's speculation that Malibu purposefully deceived him to download the copyrights-in-suit. Nor has John Doe submitted evidence from which a trier of fact might find that Malibu's lawsuit is anything other than a "good faith attempt to enforce a copyright," conduct which "does not violate the antitrust laws." Columbia Pictures Indus., Inc. v. Redd Horne, Inc., 749 F.2d 154, 161 (3d Cir. 1984). John Doe identifies no authority for his claim that a copyright holder abuses its copyrights by pursuing only the most easily identifiable infringers, *viz.*, those whose IP addresses are traceable by their download and redistribution activities on BitTorrent. (See Doc. 122-2 ¶ 23). In sum, John Doe fails to demonstrate that Malibu's enforcement of its valid copyrights contravenes the purposes of copyright law. No reasonable juror could conclude that Malibu misused or abused its copyrights for the reasons offered by John Doe. We will grant summary judgment to Malibu on the misuse defense.

### 6. De Minimis *Infringement*

John Doe asserts that his infringement, if any, is *de minimis*. (See Doc. 33 ¶ 39). Both John Doe and Malibu move for summary judgment on this affirmative defense.

The *de minimis* infringement defense is most often applied in determining whether an allegedly infringing work bears sufficient "substantial similarity" to the original, copyrighted work to be deemed an unlawful copy thereof. See 2 NIMMER ON COPYRIGHT § 8.01[G]. The defense as so construed provides no refuge to John Doe, who concedes that he downloaded and redistributed full-length, exact copies of 19 of Malibu's original, copyrighted works. (Doc. 140-1 ¶ 6; see Doc. 33 ¶ 23; Doc.

126 at 16).  The "overwhelming thrust of authority" among federal courts adheres to this narrow construction of the *de minimis* defense.  2 NIMMER ON COPYRIGHT § 8.01[G] (collecting cases).

Some courts, however, have extended the doctrine to consider the ultimate impact of infringement on the copyright holder.  Id.  These courts suggest that relief should be denied when infringing conduct is of no material consequence.  Id. (citing Ringgold v. Black Entm't TV, Inc., 126 F.3d 70, 74 (2d Cir. 1997); Knickerbocker Toy Co. v. Azrak-Hammaw Int'l, 668 F.2d 699, 702, 703 (2d Cir. 1982)).  Examples include placing a copy of a *New Yorker* cartoon on a refrigerator or making a copy of a work that is "never used."  Ringgold, 126 F.3d at 74; Knickerbocker Toy Co., 668 F.2d at 702-03.  One author offered as an example singing "Happy Birthday" to restaurant patrons, suggesting that infringements of this nature are so trivial as to not warrant recourse under the copyright laws.  See Pierre N. Leval, *Essay: Nimmer Lecture: Fair Use Rescued*, 44 U.C.L.A. L. REV. 1449, 1457-58 (1997).

We need not resolve the dissonance between these two constructions.  Assuming *arguendo* that the broader characterization of the *de minimis* defense applies, the examples cited above make clear that John Doe's downloading and redistributing activities exceed the bounds of *de minimis* infringement.  John Doe admits that he downloaded and redistributed—to innumerable BitTorrent users worldwide—19 full-length versions of Malibu's copyrighted works.  By no measure could such activity be deemed *de minimis*.

John Doe also asserts that his infringement is *de minimis* when measured against that which he claims is accomplished by Malibu's former content partners.

(See Doc. 33 ¶ 39). Not only is this proposition unaccompanied by legal authority, it lacks evidentiary support. John Doe cites to tubesite screenshots displaying one copyright-in-suit, titled "A Little Rain Must Fall," (Doc. 126-12), as support for his sweeping claim that tubesites "have distributed the twenty disputed videos up to 10 million times" and that "distribution of Malibu's videos on [tubesites] outstrips the use of torrent websites by 10 fold." (See Doc. 126 at 42; Doc. 133 at 9). The exhibit reflects only the number of times that the particular copyrighted video was viewed on certain tubesites—not the number of times it was downloaded or redistributed. It provides no support for John Doe's claim that torrent site infringement pales in comparison to alleged tubesite infringement. To the extent that John Doe avers that Malibu cannot pursue infringement by BitTorrent users without also pursuing infringers across tubesites, we again reject the unsupported suggestion. For all of these reasons, we will grant summary judgment to Malibu on John Doe's *de minimis* infringement affirmative defense.

### 7. *Innocent Infringement*

John Doe lastly invokes an innocent infringer defense, claiming that "any purported infringement was unintentional and innocent." (Doc. 33 ¶ 41). Malibu alone moves for summary judgment as to this defense.

Section 504(c)(2) of the Copyright Act provides that a court may reduce an award of statutory damages to a sum of not less than $200 "[i]n a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware of and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). The burden is with the alleged

infringer to "prove[] not only that his infringing conduct was made in a good faith belief of the innocence of his conduct, but also that he was reasonable in holding that good faith belief." 4 NIMMER ON COPYRIGHT § 14.04[B][2][a]. When a notice of copyright is affixed to a copyrighted work, "no weight is given to [a] defendant's interposition of a defense based on innocent infringement." Id. (citing 17 U.S.C. §§ 401, 402); see Elsevier, Inc. v. Comprehensive Microfilm & Scanning Servs., No. 3:10-CV-2513, 2014 WL 7140003, *3 (M.D. Pa. Dec. 12, 2014) (collecting cases).

John Doe asserts cursorily that, based on the presence of Malibu's content on tubesites advertising its videos to "download" and "share," a reasonable person would believe that downloading and redistribution of Malibu's content through the BitTorrent network was not only permissible but encouraged. (See Doc. 127 at 7-8). We again reiterate that nothing about the tubesites would indicate to a reasonable person that downloading and sharing the content *via BitTorrent* was permissible. Moreover, Malibu has adduced evidence that its website and the version of each video downloaded by John Doe contained copyright notices. (Doc. 122-2 ¶¶ 51, 66). John Doe generally denies these facts, but he cites nothing in the record to refute Malibu's evidence. (See Doc. 140-1 ¶¶ 51, 66). We conclude that, viewing the record evidence in the light most favorable to John Doe, no juror could find him to be the "innocent infringer" contemplated by Section 504(c)(2). We will grant summary judgment to Malibu on this affirmative defense.

### 8. *Remaining Defenses*

John Doe raises affirmative defenses of failure to mitigate, accord and satisfaction, and failure to plead immediate or ongoing harm for purposes

of injunctive relief. (Doc. 33 ¶¶ 40, 42, 43). Malibu has moved for summary judgment on each of these defenses, (see Docs. 122 at 20-21, 23, 24), and John Doe failed to respond, (see Doc. 127). We find that, by failing to respond to Malibu's Rule 56 arguments, John Doe has abandoned these affirmative defenses, Stauffer v. Navient Sols., LLC, 241 F. Supp. 3d 517, 519 n.3 (M.D. Pa. 2017) (Conner, C.J.) (collecting cases), and we will grant Malibu's unopposed Rule 56 motion as to each.

## IV.   **Conclusion**

We will grant Malibu's motion for summary judgment on the issue of whether the record establishes direct copyright infringement for all copyrights-in-suit except for the disputed video "In for the Night." We will also grant summary judgment to Malibu on John Doe's affirmative defenses of actual or implied license, unclean hands, estoppel, copyright misuse, *de minimis* infringement, innocent infringement, failure to mitigate, accord and satisfaction, and failure to state a claim for injunctive relief. We will otherwise deny the pending motions for summary judgment.

The Rule 56 record bears out what we have intimated since the beginning of this litigation: there is simply no merit to John Doe's assertion that, by offering its content on various tubesites, Malibu expressly or implicitly signaled to John Doe that he was free to download and redistribute its content through the BitTorrent network. This theory finds no support in law, logic, or the instant Rule 56 record. There remain genuine and material disputes of fact, however, as to whether Malibu knowingly abandoned its right to enforce these particular copyrights by placing content on the internet for public consumption. Accordingly, this matter will be set for trial on the issues of (1) whether John Doe engaged in unauthorized copying of

the disputed video "In for the Night" and (2) whether Malibu, itself or through the acts of its agents, abandoned its rights under the Copyright Act to the 20 copyrights-in-suit.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        November 8, 2018